**Janettarose L. GREENE,
Trustee, Petitioner**

v.

**PUBLIC SCHOOL EMPLOYEES'
RETIREMENT SYSTEM,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 9, 2005.
Decided June 29, 2005.

Joel S. Luber, Paoli, for petitioner.

Lenann T. Engler, Asst. Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Janettarose L. Greene (Greene), successor Trustee of the Charlie Mae Moore Brown Revocable Trust (Trust), appeals from a Public School Employees' Retirement Board (Board) order refusing to give effect to a June 23, 2003 Assignment executed by Charlie Mae Moore Brown (Decedent) to designate the Trust as beneficiary of her retirement account due from the Pennsylvania School Employees' Retirement System (PSERS).

Decedent was a member of PSERS since September 1, 1973, as a result of her employment with the Philadelphia School District beginning on that date. On June 23, 2003, Decedent executed two documents in the presence of her counsel, Joel S. Luber, Esquire (Attorney Luber): the Trust, as Grantor and Trustee; and a document entitled "Assignment."[1] The Assignment, by its terms, purported to transfer to the Trust all of Decedent's rights, title and interest in and to all of her assets of every kind.[2]

Decedent died on July 18, 2003, without having filed the Trust or the Assignment with PSERS.[3] PSERS received Decedent's death certificate on August 12, 2003. The Assignment of her retirement account was not presented to PSERS until September 18, 2003. On the date of Dece-

1. Decedent's competency at the time of the execution of these documents was not before the Board. That issue was left to proceedings before the Orphan's Court at the Philadelphia Court of Common Pleas.

2. Specifically, the Assignment stated:

ASSIGNMENT

**FOR VALUE RECEIVED,** the undersigned, Charlie Mae Moore Brown, conveys to herself, as Trustee of the Charlie Mae Moore Brown Revocable Trust dated June 23, 2003 (the "Trust"), all of her right, title and interest in and to assets of every kind, including but not limited to real property, tangible personal property, securities, expectancies, inheritances, and other intangible personal property, and anything else which may be the subject of ownership, and hereby designates the Trust as beneficiary of all "policies" of every kind, as defined therein, regardless of whether the form of beneficiary designation otherwise required by the payor of such benefits is executed by me at any time after the date of this Assignment.

**TO HAVE AND TO HOLD** all of the foregoing assets unto the said Trustee, her successors and assigns, to and for her own proper use, benefit and behalf forever.

**IN WITNESS WHEREOF,** the undersigned has executed this Assignment as of the date set forth below.

(Reproduced Record at 95a.) The document is signed by Decedent and dated June 23, 2003. Attorney Luber signed as a witness.

3. The hearing examiner found that there was no evidence that Decedent made an effort to obtain a PSERS' Nomination of Beneficiaries form to change her beneficiary designation to the Trust.

dent's death, the Nomination of Beneficiaries form on file with PSERS designated Tamara Brown Douglass (Douglass) and Samuel J. Brown, IV (Brown), her children, each as 50% principal beneficiaries of Decedent's retirement account with PSERS.[4] On September 25, 2003, both Douglass and Brown filed Applications for Option 1 Death Benefits with PSERS and were notified that each of them would receive a payment in the amount of $336,684.27 within seven to 10 days. On October 30, 2003, checks were sent by the State Treasury Department, but as a result of the Assignment, PSERS stopped payment.

Greene, in her capacity as Trustee of the Trust, requested an administrative hearing, contending that the proceeds of Decedent's PSERS' retirement account be distributed to the Trust rather than to the previously designated beneficiaries, Douglass and Brown. PSERS answered, contending that the purported change in beneficiary was not effective because it was not filed with the Board before Decedent's death, and the change was not on a form provided by the Board as required by statute and regulation. Both Douglass and Brown filed petitions to intervene.

Before the Board, Attorney Luber testified that he had his first conversation with Decedent by telephone on June 20, 2003, to confirm that she wanted him to proceed with the preparation of a revocable trust, durable power of attorney and a blanket assignment of all of her assets. He testified that he had not previously performed any legal services for Decedent but had for Greene, who was Decedent's friend, who contacted him by e-mail on Decedent's be-

half. After the telephone call with Decedent, Attorney Luber testified that he met with Decedent on June 23, 2003, in her private hospital room. Attorney Luber testified that there were no witnesses present at the meeting, but he verified that Decedent was lucid and understood the purpose of the documents that he had prepared and her testamentary and trust intentions. After she executed the documents, he had a discussion with her regarding whose responsibility it would be to obtain the necessary forms to transfer assets that required beneficiary changes, and she indicated that it was to be his responsibility.

Attorney Luber then testified that around July 10, 2003, he went on vacation, but had known he would be leaving at the time of his meeting with Decedent. He also testified that he knew Decedent was a teacher in the Philadelphia School System and a member of PSERS and also was familiar with PSERS and understood its requirements. However, he testified that he did not attempt to procure any forms from anyone to change any beneficiary designation to the Trust prior to coming back from his vacation. While he was on vacation, Attorney Luber's office notified him of Decedent's death. It wasn't until his return from vacation that he began to make telephone calls to all entities or organizations that he knew about to inform them of the Trust and the Assignment, and he did not send any documentation to PSERS regarding Decedent's intent to change her beneficiaries until September 18, 2003.[5]

Michelle Sellers (Sellers), an administrator for PSERS, testified that PSERS' nor-

---

4. Douglass and Brown were also named as the residual beneficiaries of the Trust.

5. Only the Assignment and Trust documents were sent to PSERS. PSERS never received any Nomination of Beneficiaries form designating Greene or the Trust as the new beneficiary.

mal procedure upon notification of the death of an in-service member was to send out correspondence requesting a death certificate and then, once that was received, to send the necessary forms to the beneficiaries that were listed on the latest Nomination of Beneficiaries form filed with PSERS. Once that information was received, PSERS calculated the benefit payable and paid it to the beneficiaries so listed. On cross-examination, it was also revealed that PSERS had knowledge of Luber's involvement with the Estate of Decedent on or before August 4, 2003, and on August 4, 2003, wrote to Attorney Luber requesting information regarding the Estate and death of Decedent. However, Sellers testified that contact related to the annuitant death benefits and not to Decedent's in-service account.

The hearing examiner recommended to the Board to reject Greene's request that the Assignment executed by Decedent be accepted as a new Nomination of Beneficiaries form timely filed with the Board and dismissed her appeal because Decedent did not make a reasonable attempt to do everything within her power to effectuate a change in her beneficiary prior to her death. Based on the extant March 12, 2002 Nomination of Beneficiaries form signed by Decedent, the hearing examiner concluded that her beneficiaries, as defined by the Public Employes' Retirement Code (Code), 24 Pa.C.S. § 8102,[6] were Douglass and Brown.

 Greene filed exceptions to the opinion and recommendation of the hearing examiner. However, finding the hearing examiner's Findings of Fact, Discussion, Conclusions of Law and Recommendation to be correct, the Board adopted[7] them as its own and denied Greene's request to accept the Assignment executed by Decedent on June 23, 2003, as a timely filed new Nomination of Beneficiaries form. This appeal followed.[8]

 Greene contends that the Assignment executed by Decedent on June 23, 2003, was legally effective to change the beneficiary of her PSERS' retirement account as of the date of her death on July 18, 2003, to be payable to the Trust because: 1) it was the functional equivalent of a PSERS' Nomination of Beneficiaries form; 2) it was filed with the Board; and 3) Decedent substantially complied with the terms of the statute and/or regulations governing the designation of beneficiaries of a PSERS' retirement account.

The Code also requires every member to nominate a beneficiary for death benefits[9] by written designation filed with the Board. 24 Pa.C.S. § 8507(e). Specifically,

---

6. The Code defines "beneficiary" as "the person or persons last designated in writing to the board by a member to receive his accumulated deductions or a lump sum benefit upon the death of such member." 24 Pa.C.S. § 8102.

7. While the hearing examiner accepts evidence and makes a recommendation, it is the Board that is the finder of fact. *Higgins v. Public School Employes' Retirement System,* 736 A.2d 745 (Pa.Cmwlth.1999).

8. On review of a final adjudication of an administrative board, the Board is the ultimate fact-finder, and our scope of review is limited to determining whether it committed an error of law, constitutional rights were violated, or the Board's factual findings were supported by substantial evidence. *Dowler v. Public School Employes' Retirement Board,* 153 Pa.Cmwlth. 109, 620 A.2d 639 (1993).

9. Regarding death benefits, the Code provides that a death benefit equal to the present value of a member's maximum single life annuity becomes payable to the beneficiary of a member who dies and was eligible to receive an annuity. 24 Pa.C.S. § 8347(a); 24 Pa. C.S. 8345(a)(1).

24 Pa.C.S. § 8507(e) states, in pertinent part:

> (e) BENEFICIARY FOR DEATH BENEFITS.—Every member shall nominate a beneficiary by written designation filed with the board to receive the death benefit or the benefit payable under the provisions of Option 1. *Such nomination may be changed at any time by the member by written designation filed with the board.* A member may also nominate a contingent beneficiary or beneficiaries to receive the death benefit or the benefit payable under the provisions of Option 1. (Emphasis added.)

The Board implemented this provision by promulgating Board Regulation 22 Pa. Code § 215.7(d), which provides:

> (d) Beneficiaries. Every member shall nominate a beneficiary and contingent beneficiary, if desired, *on a form to be filed with the Board and supplied by the Board.* In all these cases, the designated or contingent beneficiary, as the case may be, shall be the only one entitled to receive the accumulated deductions or the death benefit for those who die in service or those who would be entitled to a benefit under Option 1 under section 8345 the Retirement Code (relating to member's options). (Emphasis added.)

Because Decedent only filed the Assignment with the Board, which purported to transfer to the Trust all of her rights, title and interest in and to all of her assets of every kind, even if it had been filed during her lifetime, the Code required further documentation, specifically, the Nomination of Beneficiaries form.

Citing to *Coleman Appeal,* 33 Pa. D & C 2nd 191 (1963), Greene, however, argues that the Assignment, filed two months after the death of Decedent, was legally effective to cause the balance in her PSERS' retirement account to be payable to the Trust because a PSERS member can change a beneficiary by filing a blanket assignment after her death if she does everything in her power to make the change, and everything under the circumstances reasonably possible to comply with the Code and the regulations.

In *Coleman,* the Court of Common Pleas of Dauphin County, which was acting in the same capacity assumed by the yet-to-be-created Commonwealth Court, held that a nomination of beneficiaries form received by the Board *after the death* of a PSERS member *may only be effective if* that member made all possible efforts to file the nomination with the Board prior to death. In that case, a petitioner contested PSERS' benefits based on two competing beneficiary forms, one of which was filed with PSERS in 1945 and was signed by two witnesses, while the other was completed in 1957, was not signed by any witnesses, and, more importantly, was never filed with PSERS. Relying on the fact that, normally, in life insurance contracts, the general rule is that the mode prescribed by an insurance policy for a change of beneficiary must be strictly and exactly followed, and the only exception to that rule is in situations where it can be showed that an insured did everything in his power to make the change and had done everything under the circumstances reasonably possible to comply with the policy terms, the Court of Common Pleas of Dauphin County upheld the 1945 form because the Code [10] required that the nomination of

---

10. The statute interpreted in *Coleman* was Article IV, Section 406(3) of the School Employees' Retirement Code of June 1, 1959,

P.L. 350, *as amended,* 24 P.S. § 3406(3) (the 1959 Code), which read as follows:

Should a contributor who is not eligible for retirement ... die before retirement, his

beneficiaries form be filed with PSERS, the 1957 form was never filed, and the record disclosed that the decedent knew of the required filing, had time to change beneficiaries, and had no physical barriers impeding her from filing the form. The *Coleman* Court, thus, concluded that the failure to file the form was purposeful.[11] Under the *Coleman* test, the question then is whether Decedent made all possible efforts to designate the new beneficiary prior to her death by executing the Assignment and then entrusting her attorney to obtain the necessary documents to effectuate that change with PSERS.[12]

Ignoring whether the change in the beneficiary of her retirement account has to be on an "official form," [13] *Coleman's* hold-

---

accumulated deductions shall be paid to his estate or to such person as he shall have nominated by written designation duly executed and filed with the retirement board. Although the 1959 Code was repealed in its entirety and replaced with the present Code, the subject matter of Section 406(3) of the 1959 Code is now covered by Sections 8347 and 8507 of the Code which contain almost identical language.

**11.** Greene cites to *In re: Estate of Golas*, 751 A.2d 229 (Pa.Super.2000) to support her contention that Brown's actions before her death meet the exception to the general rule because she did everything in her power to make the change and had done everything under the circumstances reasonably possible to comply with the policy terms before her death. In *Golas*, a decedent had established an IRA with his sister named as the beneficiary. Shortly before his death, he established a trust and sought to have the beneficiary on the IRA changed so that the funds would go into the trust. He was unable to get the necessary forms, however, because his broker was away on vacation, and although he spoke to another broker, the forms did not arrive on time. The Superior Court concluded that the decedent had made every reasonable effort to change the beneficiary of his account according to the bank's terms and so his intended change should be given effect. Ignoring that this case involves a statutory requirement that the designation has to be filed with the Board, unlike in *Golas*, Brown did not request a Nomination of Beneficiaries form prior to her death and her Assignment was not even filed with the Board until two months after her death.

**12.** Greene argues that when the legislature enacted the present Code, its inclusion of Section 8505(h), which mandates that the Board make the first payment due to a designated beneficiary "within 60 days after re-

ceipt of certification of death and other necessary data," shows that it intended to allow written Nomination of Beneficiaries forms to be submitted after the death of a PSERS member. This argument fails, however, because when reading that sub-section in full, it provides:

> (h) Death benefits.—Upon receipt of notification of the death of a member, the board shall notify the designated beneficiary or survivor annuitant of the benefits to which he is entitled and shall make the first payment to the beneficiary under the plan elected by the beneficiary within 60 days of receipt of certification of death and other necessary data. If no beneficiary designation is in effect at the date of the member's death or no notice has been filed with the board to pay the amount of such benefits to the member's estate, the board is authorized to pay such benefits to the executor, administrator, surviving spouse or next-of-kin of the deceased member, and payment pursuant hereto shall fully discharge the fund from any further liability to make payment of such benefits to any other person. If the surviving spouse or next-of-kin of the deceased member cannot be found for the purpose of paying such benefits for a period of seven years from the date of death of the member, then such benefits shall be escheated to the Commonwealth for the benefit of the fund.

24 Pa.C.S. § 8505(h). The "other necessary data" it was referring to was not a Nomination of Beneficiaries form, but administrative data like the updated address of the beneficiary.

**13.** The regulation specifically provides that a member shall nominate a beneficiary on a form supplied by the Board. Citing to *Lowing v. Public School Employees' Retirement Board*, 776 A.2d 306 (Pa.Cmwlth.2001), Greene contends that we have previously held

ing, making an exception for "all possible efforts," presupposes that a PSERS member has made a written designation specifically changing who is to receive the death benefits from his or her PSERS' retirement account, but then dies shortly before the written designation reaches the Board in the normal course of business. It did not envision that a blanket assignment of all assets constituted "all possible efforts" and was the type of written designation that could act to change a beneficiary after a member's death. Because a blanket assignment of assets is not the functional equivalent to a specific change in beneficiaries, even if such an assignment reached the Board prior to a member's death, it would not act to change the beneficiary of the members' PSERS' retirement account because that requires a separate nomination.

Accordingly, because the March 12, 2002 Nomination of Beneficiaries form designating Douglass and Brown as the beneficiaries of Decedent's PSERS' retirement account was the last designation of beneficiaries on file at the time of Decedent's death, the death benefits in the amount of $747,224.82 were properly payable to Douglass and Brown, and the order of the Board denying Greene's request to accept the Assignment as a new Nomination of Beneficiaries form timely filed with the Board, effectively distributing Decedent's retirement account with PSERS to the Trust, is affirmed.

## ORDER

AND NOW, this *29th* day of *June*, 2005, the order of the Public School Employees' Retirement Board at No. 2003–37 denying Janettarose L. Greene's request that the Assignment executed by Charlie Mae Moore Brown on June 23, 2003, be accepted as a new Nomination of Beneficiaries form timely filed with the Board, is affirmed.

that no particular form of writing is mandated by the Code to nominate a beneficiary. However, *Lowing* did not stand for that proposition. In *Lowing*, a decedent had designated his ex-wife as the beneficiary of his retirement account prior to their divorce. After the divorce, the decedent filed a second nomination of beneficiaries form naming a new beneficiary, which was signed by two witnesses, one of them being the new beneficiary. The instructions on the form stated that two witnesses had to sign it, and that the named beneficiary could not be a witness. The ex-wife argued that the second nomination of beneficiaries form was, therefore, void and the death benefits should have reverted to her. In addressing whether the instructions on the PSERS' Nomination of Beneficiaries form must be strictly followed in order to effectuate a valid beneficiary designation for a member's PSERS' retirement account, this Court found nothing in the Code or its regulations suggesting that the beneficiary form needed to be witnessed; however, we did state that the regulations provided that the Board supply its own form, but did not specify the content of the form. Finding that the instructions contained on the form were not promulgated in accordance with the law commonly known as the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, as amended, 45 P.S. §§ 1102–1611, and thus, could not be a binding legislative regulation, we held that the instructions on the form were a guide for the Board to use in ensuring that the member's signature was authentic and that his intent was carried out, rather than a mandatory regulation that was required to be strictly followed. Accordingly, *Lowing* is not persuasive in this case because we are not dealing with the instructions on the form but the regulation itself.