69 A.3d 219

**Fatin ALKHAFAJI, Administrator C.T.A. of the Estate of Abbass Alkhafaji, Deceased, Individually and as Natural Guardian of Her Minor Children, Appellant**

v.

**TIAA–CREF INDIVIDUAL AND INSTITUTIONAL SERVICES, LLC, Ahmed Alkhafaji, Alliah Alkhafaji and Sheameh Alkhafaji–Alduaiisi, Appellees.**

**Fatin Alkhafaji, Administrator C.T.A. of the Estate of Abbass Alkhafaji, Deceased, Individually and as Natural Guardian of Her Minor Children, Appellant**

v.

**Tiaa–Cref Individual And Institutional Services, LLC, Ahmed Alkhafaji, Alliah Alkhafaji and Sheameh Alkhafaji–Alduaiisi, Appellees.**

Supreme Court of Pennsylvania.

Argued April 11, 2012.

Decided June 17, 2013.

Theodore Anthony Saad, Esq., Frank G. Verterano, Esq., New Castle, Verterano & Manolis, for Alkhafaji, Fatin, Appellant in Case Nos. 38 WAP 2011, 39 WAP 2011.

Natalie Marie Ruschell, Esq., for Alkhafaji, Ahmed, Alkhafaji, Alliah, Alkhafaji–Alduaiisi, Sheameh, Appellees in Case Nos. 38 WAP 2011, 39 WAP 2011.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *ORDER*

PER CURIAM.

**AND NOW,** this 17th day of June, 2013, the Court being evenly divided, the Order of the Superior Court is **AFFIRMED.**

Former Justice ORIE MELVIN did not participate in the decision of this case.

Justice SAYLOR files an opinion in support of affirmance in which Chief Justice CASTILLE joins.

Justice EAKIN files an opinion in support of affirmance in which Chief Justice CASTILLE joins.

Justice BAER files an opinion in support of reversal.

Justice TODD files an opinion in support of reversal in which Justices BAER and McCAFFERY join.

Justice SAYLOR, *opinion in support of affirmance.*

I agree with Mr. Justice Eakin that the Superior Court's order should be affirmed, and observe, additionally, that the question this Court accepted for review erroneously characterizes the intermediate court's decision as holding that, by law, the decedent's will could not, under any circumstances, have constituted notice to TIAA–CREF to designate beneficiaries. *See Alkhafaji v. TIAA–CREF,* 612 Pa. 311, 30 A.3d 1100 (2011) *(per curiam ).* To my reading, that is not what the Superior Court held. For example, the court did not purport to foreclose the possibility that a copy of the will, if it had been sent to TIAA–CREF in a timely manner by the decedent during his lifetime (regardless of when it may have been

received), could have constituted valid written notice of a change in beneficiaries. *Accord* Opinion in Support of Affirmance, at 222 (Eakin, J.) ("As [the will] was a writing, the decedent could have sent it to the insurer, which might have sufficed...."). Rather, a fair reading of the intermediate court's opinion reveals that it merely determined that the decedent failed to substantially comply with the terms of the policies in question because he never made any attempt to notify TIAA–CREF of the beneficiary changes at issue— although the record reveals that he lived for more than two months after dictating the will, was in sound mind during that time, and was undoubtedly familiar with the requirements for changing beneficiaries.[1] *See generally* Brief for Appellees at 2 (pointing out that the question accepted for review was not addressed by the Superior Court, as that tribunal "determined the case on separate grounds"). The issue on which this case turns is therefore whether substantial compliance with the terms of the contract was achieved. Because I believe that the Superior Court was correct in finding a lack of substantial compliance, I would affirm.

Notably, Madame Justice Todd's Opinion in Support of Reversal ("OISR") acknowledges that the annuity contracts in issue "required decedent to ... furnish TIAA–CREF with written notice of his designated changes." OISR, at 233 n.6 (Todd, J.). The OISR, however, never addresses the issue of substantial compliance by the decedent in this material respect. Rather, the OISR merely declares at the end of the opinion that, under the circumstances, decedent properly used his will to change the beneficiaries of his annuities.[2] It is

1. *See Alkhafaji v. TIAA–CREF, LLC*, Nos. 287 & 363 WDA 2010, *slip op.* at 3 n. 2, 8–9 (Pa.Super. Feb. 14, 2011) ("Decedent lived more than two months after he executed the will, yet he made no effort to comply with the written notice requirement for changing beneficiaries.... [W]e cannot conclude that Decedent did all he reasonably could under the circumstances to comply with the terms of his policy."); N.T., April 11, 2007, at 21, *reproduced in* R.R. 42a (reflecting testimony that decedent was of sound mind between the time he dictated his will and the time he died more than two months later).

2. Justice Todd's OISR makes much of the fact that the policy in issue permitted receipt, by TIAA–CREF, of notice after the insured's death.

difficult to know what standard the OISR applies to find that the decedent's actions were sufficient to substantially comply with the contract's notice term. Indeed, the OISR's brief statement in this regard appears to stem from its view of the case as fundamentally involving the legal question of whether a will can ever be utilized to change beneficiaries.

In discussing this question, the OISR takes particular exception because it perceives the present, unpublished Superior Court opinion as having interpreted the intermediate court's earlier decision in *Carruthers v. $21,000 (Formerly New York Life Insurance Company)*, 290 Pa.Super. 54, 434 A.2d 125 (1981), "to stand for the proposition that a will, as a matter of law, cannot operate to change the beneficiary of an annuity policy," OISR, at 233 (Todd, J.). However, that is hardly a basis for disapproving *Carruthers* itself, *see id.* at 15 ("I would, therefore, hereby disapprove *Carruthers.*"), since *Carruthers* dealt centrally with the issue of substantial compliance, regardless of whether the unpublished Superior Court disposition in the present matter correctly described its holding.

To the extent, moreover, that the Justices supporting reversal view *Carruthers* as having expressed the same "erroneous belief" "that a will, as a matter of law, cannot operate to change" beneficiaries, *id.* at 14–15, such understanding is not supported by the text of the *Carruthers* opinion. Although *Carruthers,* like the present case, involved a will, there is no indication that the court viewed the will as incapable, *per se,* of effecting a beneficiary change. Rather, the court explained that "notice of the will was not brought to the attention of the insurer until after the death of the insured," *Carruthers,* 290 Pa.Super. at 57, 434 A.2d at 127, although, like here, the decedent lived several months after executing his will and was familiar with the policy's provisions relating to beneficiary changes. Furthermore, the *Carruthers* court highlighted, "the insured [himself] made no effort to comply with the

It does not explain, however, how an after-death *receipt* provision negates the express requirement for the decedent at least to make some attempt to effectuate notice within his lifetime.

[notice-to-insurer] provisions of his policy." *Id.* On this basis, the court determined, ultimately, that the insured did not "do[ ] all that he reasonably c[ould] under the circumstances to comply with the terms of the policy." *Id.* If the court had intended to hold that a will cannot, under any circumstances, effect a change of beneficiaries, there would have been little need to recite these factors as, indeed, they would have been immaterial. In my view, *Carruthers* was correctly decided and appropriately remains good law.

In summary, I do not read the Superior Court's decisions in *Carruthers*, or in the present case, as implementing a *per se*, state-law prohibition upon the transmittal of a will to an insurance or annuity company as a means of conveying notice of a change of beneficiary. Rather, I read them as correctly enforcing a substantial compliance requirement that the policy-or-contract holder make some effort at effectuating notice, albeit this might be received by the company after his death.

For all of these reasons, I agree with the lead OISR that the judgment of the Superior Court should be affirmed.

Chief Justice CASTILLE joins this Opinion in Support of Affirmance.

Justice EAKIN, opinion in support of affirmance.

The Superior Court reversed the order of the orphan's court, which distributed decedent's retirement annuities in accordance with decedent's will, rather than the beneficiary designations in his annuity contract. Applying longstanding principles of contract and probate law, the Superior Court properly found decedent made no effort to change the beneficiary designations by the terms of his annuity contract; as such, the will did not undo his designations in the contract.

Decedent signed a property settlement agreement when divorcing his second wife, wherein he agreed to designate the children from his first two marriages as the beneficiaries of his retirement annuity contracts—he notified the appellee annuity company and made that change. Some years later, while hospitalized with spinal cancer, decedent dictated and

executed a new will which called for the proceeds of his annuity contracts to go to appellant and all of his children. Decedent did nothing to give appellee notice of this change of mind, as the contract required. Two months later, he died; his executor sent copies of the will and the marital settlement agreement to appellee. Appellant filed a petition to enjoin distribution of the annuities.

Appellant frames the following question: "Is a change of beneficiaries by will permitted, as a matter of law, when the notice provisions in annuity contracts did not clearly and unambiguously preclude a beneficiary designation by will?" This second clause of this question is a red herring. The first half states the fundamental question: may a will change a contractual beneficiary? The second clause suggests that the answer is dependent on whether the annuity contract expressly prohibits it. This contract of course did not prohibit anything. Essentially, insurance contracts set forth rights and duties of the parties, including the means by which the contract may be modified—they typically do not attempt a comprehensive list of prohibitions. Affirmative requirements for modifying a contract are not rendered meaningless by failure to preclude all other methods. If a contract requires a party to pay by certified check, that does not mean the party can pay in wampum simply because the contract does not expressly prohibit it. This annuity did not preclude changes by will, but it also did not prohibit changes by skywriting, a letter to the editor, or posting it on a Facebook page.

When a contract expressly provides the means of changing its terms, changes must be made in the manner and mode prescribed therein. This is rather basic contract law. It is beyond peradventure that to effectuate a change in the beneficiary of an insurance policy, a party must comply with the procedures set forth in the policy. *Riley v. Wirth,* 313 Pa. 362, 169 A. 139, 140 (1933); *Sproat v. Travelers' Ins. Co.,* 289 Pa. 351, 137 A. 621, 622 (1927); *Stickney v. Muhlenberg College TIAA–CREF Retirement Plan,* 896 F.Supp. 412, 418 (E.D.Pa.1995) (applying Pennsylvania law). This contract, indeed most if not all annuity contracts, expressly required

one thing to change beneficiaries—notice, sent to the insurer, in writing. This annuitant manifestly knew about these requirements, for he changed his beneficiary designations in accordance with them pursuant to the agreement with his second wife. Presently, there was no attempt or effort at all to comply with the contract's terms.

Perhaps decedent could have used a will to comply with the contract requirements. As it was a writing, decedent could have sent it to the insurer, which might have sufficed had the company found it sufficiently clear. However, decedent did not do this, or try to do this. Decedent in fact did nothing—he took no steps to do the single thing the contract required. While a will could be the writing used to provide notice of a desire to change beneficiaries, if it is not sent to the insurer by the annuitant, it is merely an unmailed letter. As concerns the annuities, there is no magic in the fact it was a will.

The general rule concerning a change of beneficiary requires strict or literal compliance with policy terms, though our case law has recognized an exception where an insured makes reasonable but unsuccessful efforts to send notice. This exception will recognize a change in beneficiary designation, even though notice is received after the death of the annuitant, if the annuitant made every reasonable effort to comply with the notice requirements of the policy. *See Breckline v. Metropolitan Life Insurance Co.*, 406 Pa. 573, 178 A.2d 748, 750 (1962); *Riley*, at 140; *Sproat*, at 622; *In re Estate of Golas*, 751 A.2d 229, 231 (Pa.Super.2000); *Carruthers v. $21,000*, 290 Pa.Super. 54, 434 A.2d 125, 127 (1981); *Greene v. Public School Employees' Retirement System*, 878 A.2d 153, 157 (Pa.Cmwlth.2005); *Dale v. Philadelphia Board of Pensions and Retirement*, 702 A.2d 1160, 1163 (Pa.Cmwlth.1997); *Provident Mutual Life Insurance Company of Philadelphia v. Ehrlich*, 508 F.2d 129, 132–33 (3d Cir.1975) (applying Pennsylvania law); *Stickney*, at 418 (applying Pennsylvania law). A will unsent constitutes *no* reasonable effort at notice, much less "every reasonable effort." Equity and our case law may

reward the stalwart but unsuccessful effort, but they never reward the absence of effort.

The instant policy provides:

Procedure for Elections and Changes. You, or your Second Annuitant or beneficiary having the right to do so, may elect to change, *in accordance with the terms of our certificate,* any of the following *by written notice satisfactory to TIAA* (CREF) [sic], *sent to its home office* in New York, NY. No such notice will take effect unless it is received by TIAA (CREF). When received, it will take effect as of the date it was signed, whether or not the signer is living at the time we receive it.

Trial Court Opinion, 1/15/10, at 5–6 (quoting TIAA Group Manual Section 37 and CREF GROUP Manual Section 44) (emphasis added).

As there is no "Second Annuitant or beneficiary having the right," it is the annuitant, the "you" in the above section, who must send satisfactory written notice to the home office of TIAA–CREF—it is, after all, only the parties to a contract that have the ability to modify it. The policy clearly does not contemplate, much less authorize, posthumous notice. Indeed, the contract here, and our case law, contemplates written notice to the insurer from the insured—once the party to the contract dies, the ability to modify the contract dies unless the contract provides otherwise—here, it does not. Absent a change in the terms by the means required by the contract, the obligation of the insurer is to carry out the terms of the contract as it exists.

This is for good reason. If unilateral changes in contracts by the use of testamentary instruments are posthumously recognized, insurance companies (indeed, all fiduciaries) would be unable to rely on the existing contract terms. Reliance on the beneficiary designation in the contract becomes a dangerous proposition, particularly where the existence of a will is unknown, or not promptly found or presented, or where a will contest may be anticipated, or, as here, where a wife and ex-wife compete on behalf of their children. Would the result

change if the will predates the contract designation, or the contract designation predates the will?

Parties to a contract must have the ability to rely on the terms of their contract, and should not have to speculate about testamentary clauses in documents of which they have no awareness. To allow modification of non-testamentary contractual assets by testamentary documents blurs the timeless and very practical distinction between the two, notably set forth in 20 Pa.C.S. § 6108.[1] Allowing contract notice requirements to be ignored based on the lack of a prohibition of other writings is bootstrapping at its best, and is squarely against the law of contracts. Such a change in our law would cause convolutions we cannot foresee, including tax consequences, estate planning uncertainties, and family law problems—indeed, the beneficiary designation in this case being a requirement of a marital property settlement agreement, allowing it to be altered after death through a will is problematic at best.

There appears no logical basis for changing this law, nor is there a cognizable reason in equity for conflating the venerable law of contracts and the world of probate. There is no reason to depart from the line of authority requiring a party to comply with the contract entered. A will is still a will, and a contract should remain a contract. Blurring the distinction is a bad idea, and the decision of the Superior Court should be affirmed.

Former Justice ORIE MELVIN did not participate in the decision of this case.

1. That statute, in relevant part, provides:
   The designation of beneficiaries of life insurance, annuity or endowment contracts, or of any agreement entered into by an insurance company in connection therewith, supplemental thereto or in settlement thereof, and the designation of beneficiaries of benefits payable upon or after the death of a participant under any pension, bonus, profit-sharing, retirement annuity, or other employee-benefit plan, shall not be considered testamentary and shall not be subject to any law governing the transfer of property by will.
   20 Pa.C.S. § 6108(a).

Chief Justice CASTILLE joins this opinion in support of affirmance.

Justice SAYLOR files an opinion in support of affirmance in which Chief Justice CASTILLE joins.

Justice BAER files an opinion in support of reversal.

Justice TODD files an opinion in support of reversal in which Justices BAER and McCAFFERY join.

Justice BAER, opinion in support of reversal.

I join the Opinion in Support of Reversal (OISR) of Madame Justice Todd and its finding that Pennsylvania law imposes no barrier to the use of wills and other testamentary instruments as vehicles through which changes in beneficiaries to annuities, life insurance policies, and the like may be accomplished. I write separately to express my opinion that the will executed by the Decedent, Abbass Alkhafaji, two months prior to his death, was valid under the facts of this case.

Paragraph 30 of the annuity policies at issue provide, in relevant part, as follows:

> You ... having the right to do so, may elect or change, in accordance with the terms of your contract, any of the following by written notice satisfactory to TIAA sent to its home office in NY:
>
> *     *     *
>
> D) A beneficiary or any person named to receive payments remaining due.

No such notice will take effect unless it is received by TIAA. When received, it will take effect as of the date it was signed, whether or not the signer is living at the time we receive it. Any action taken by TIAA in good faith before receiving the notice will not subject TIAA to liability because our acts were contrary to what was stated in the notice.

TIAA Annuity Contract of July 1, 1994 at ¶ 30, *found at* Reproduced Record (R.R.) 261 a.[1]

As noted by Justice Todd's OISR, it is well-established in this Commonwealth that, generally, "in order to affect a change of beneficiary [in an insurance or annuity contract], the mode prescribed by the policy must be followed." *Sproat v. Travelers' Ins. Co.*, 289 Pa. 351, 137 A. 621, 622 (1927). Strict compliance is not required in all circumstances, however, and changes of beneficiaries will still be effective so long as the insured "has done all he could to comply with the provisions of the policy." *Id.* (quoting *Gannon v. Gannon*, 88 Pa.Super. 239, 243, 1926 WL 2193 (Pa.Super.1926)). In furtherance of these precepts, this Court has opined:

> where the provisions of a life insurance policy require that a written change of beneficiary be filed with the company in order to be effective, and such is executed, and every reasonable effort is made to comply with the requirements of the policy, the change of beneficiary is valid and binding, even though it is not filed with the insurer before the death of the insured.

*Breckline v. Metro. Life Ins. Co.*, 406 Pa. 573, 178 A.2d 748, 750 (1962).

In accord with Justice Todd's finding that testamentary documents are proper instruments to effectuate changes in beneficiaries, it is clear to me that Decedent not only "substantially complied" with the terms of Paragraph 30 of the annuity contracts, but, indeed, completely complied with the procedure for altering the beneficiaries to his pension. Decedent's will, which was executed while he was still of sound mind, witnessed by three individuals, and notarized, unequivocally stated that the beneficiaries of his pension "are all my biological children and my current wife Fatin...." Will of Decedent, executed Jul. 16, 2007 at ¶ 4, *found at* R.R. 10a.

After Decedent passed away, the executor of his estate sent the will to TIAA–CREF to provide it with notice of the change in beneficiaries. This action fully adhered to the explicit

---

1. The remaining TIAA and CREF contracts contain identical provisions.

terms of Paragraphs 30, given that written notice (i.e., the will), which was satisfactory to TIAA–CREF, was sent to its home office in New York;[2] was received by TIAA–CREF; and was signed and dated. Moreover, it is significant that Paragraphs 30 expressly indicate that any satisfactory notice of change of beneficiaries would be retroactively effective to the date of the notice "whether or not the signer is living at the time we receive it." In other words, the TIAA–CREF contracts specifically contemplate the receipt of a notice post-death, and Decedent and the executor of his estate fully abided by these provisions in effectuating the post-death change in beneficiaries. *Sproat*, 137 A. at 622 ("in order to affect a change of beneficiary, the mode prescribed by the policy must be followed."); *see also Breckline*, 178 A.2d at 750 (change in beneficiary will be effective so long as the procedure set by the policy has been substantially complied with, "even though [the notice of change] is not filed with the insurer before the death of the insured.").

For these reasons, I would hold not only that there is no impediment, as a matter of Pennsylvania law, to the use of testamentary documents as the notice for changing beneficiaries, but also that the will in this case fully complied with the terms of the TIAA–CREF contracts and effectively altered the beneficiaries. Accordingly, I would reverse the order of the Superior Court.

Justice TODD, opinion in support of reversal.

Appellant Fatin Alkhafaji challenges the order of the Superior Court which awards proceeds of annuities, issued by Appellee TIAA–CREF[1] and owned by her deceased husband,

2. TIAA–CREF has not challenged that the will is not "satisfactory" under the terms of the contract.

1. TIAA is an acronym for the "Teachers Insurance and Annuity Association," which was founded in 1918 for the purpose of providing "a fully-funded system of pensions for professors," and incorporated in New York as a life insurance company that same year. *See* https://www.tiaa-cref.org/public/about-us/who-we-are-at-tiaa-cref (last checked 4/30/2013). CREF is the acronym for the "College Retirement Equities Fund," which is a variable annuity plan created by TIAA in 1952 as an investment vehicle to ensure full funding of its expanding pension

Abbass Alkhafaji ("decedent"), to the beneficiaries listed in the annuities and not to the beneficiaries decedent designated in his will. As the plain language of the change of beneficiary provisions of the annuities permitted the beneficiaries to be changed via written notice received by TIAA–CREF after decedent's death, and did not expressly prohibit the use of a will as a valid and acceptable form of such written notice, I conclude the Superior Court's determination that decedent's will could not, as a matter of law, change his beneficiaries was in error. Consequently, I would reverse the order of the Superior Court and remand this matter to that court for further consideration.

The following is a brief review of the relevant facts and procedural history which brought this matter before our Court. Decedent was employed as a professor at Slippery Rock University, and had, prior to his marriage to Appellant, been married twice before. In his first marriage, decedent fathered two daughters—Appellees Alliah Alkhafaji and Sheameh Alkhafaji. During his second marriage, a son was born—Appellee Ahmed Alkhafaji. Decedent's third marriage to Appellant produced five sons, all of whom were minors at the time of the commencement of this litigation.

During the course of his employment at Slippery Rock University, decedent purchased six retirement annuities issued by TIAA–CREF.[2] Pursuant to a marital settlement agreement executed with his second wife at the conclusion of their marriage, and dated May 25, 1995, decedent named

obligations. *Id.* Thus, TIAA–CREF operates as a singular business entity.

2. Each of the six annuities contained substantially similar clauses which specified that a change in beneficiary would be accomplished by the holder whenever the holder provided "written notice satisfactory to [TIAA–CREF], sent to its home office in New York, NY." *See* "Procedure for Elections and Changes," TIAA Contract 3–571944–2, at ¶ 37, K–434259–4 at ¶ 34, and B532094–6 at ¶ 30, and CREF Certificate 4–571944–0 at ¶ 44, J–434259–6 at ¶ 36, and Q532094–3 at ¶ 32 (attached as exhibits to "Joint Stipulation of Facts," 5/22/09). These clauses further provided that the change would not take effect "unless it is received" by TIAA–CREF and that, when received, the change would take effect, or become operative "whether or not the signer is living at the time [TIAA–CREF] receive[s] it." *Id.*

Alliah, Sheameh, and Ahmed as beneficiaries on four of the six annuities.[3] Although decedent did not designate a specific beneficiary for the remaining two annuities, under TIAA–CREF plan administration procedures, decedent's naming of Alliah, Sheameh, and Ahmed as beneficiaries in his other four annuities was deemed effective for these two annuities as well.

In March 2007, while studying in Qatar on a Fulbright Scholarship, decedent was involved in a horrific car accident which left him a quadriplegic. Upon his return to the United States, decedent was hospitalized at Presbyterian University Hospital in Pittsburgh, and then transferred to Johns Hopkins Hospital in Maryland. While at Johns Hopkins, decedent was discovered to have spinal cancer, treatment of which proved unavailing, and his health quickly declined.

In July 2007, while hospitalized, decedent dictated a will to one of his students and a friend, who subsequently put it into typewritten form. Once typed, decedent signed it, with his student and friend acting as witnesses. In this will, the authenticity of which was not contested, he named all of his children from his three marriages, along with his current wife, as beneficiaries of the six annuities. The relevant provision of the will designating decedent's new choice of beneficiaries provided, as follows:

> (4) About my pension, the beneficiaries are all my biological children and my current wife Fatin, after reducing all cost (sic) associated with the house. . . .

Will of Dr. Abbass Alkhafaji, 7/16/2007 (Exhibit A attached to Petition to Enjoin Distribution of Pensions, filed 1/24/08) at 2.

After decedent passed away in September 2007, Appellant, as executor of decedent's estate, sent the will to TIAA–CREF, along with a copy of the 1995 marital settlement agreement, to

---

3. This marital settlement agreement was not delivered to TIAA–CREF on the date of its execution, but was, instead, as described *infra*, delivered along with the will to TIAA–CREF to its offices in New York City after decedent's death. Trial Court Opinion, 1/15/10, at 4; Joint Stipulation of Facts, 8/31/2009, at ¶ 1 (R.R. 296a). The trial court found that this agreement did not restrict decedent's ability to further change or add beneficiaries to his annuities. Trial Court Opinion, 1/15/10, at 12.

the New York City offices of TIAA–CREF which had not yet distributed any funds from the annuities. Trial Court Opinion, 1/15/10, at 4. The trial court, the Honorable John W. Hodge, found the will was "to act as notice of [decedent's] change of beneficiary designation." Trial Court Opinion, 1/15/10, at 5. TIAA–CREF refused to make the change, or to pay the proceeds due under the annuities to Appellant and, instead, interpleaded this money into the Court of Common Pleas of Lawrence County for distribution. Appellant, on her own behalf, and on behalf of her five minor children, subsequently filed a petition to enjoin distribution of the annuities.

The trial court granted Appellant's petition and ordered the proceeds of the annuities distributed in the manner established by decedent's will. Trial Court Order, 1/15/10. In its opinion filed in support of its order, the trial court observed that the change of beneficiary provisions in the annuities at issue merely required that written notice of the change be provided to TIAA–CREF in order for the change to be effective, and further found that TIAA–CREF was provided with such notice when it received the copy of decedent's will. Noting the decedent's deteriorating physical condition, and the fact that he was hospitalized so far from home, in pain, and under heavy sedation, the court concluded that "Decedent did all that he reasonably could under the circumstances of his illness to notify the insurer of his beneficiary change." Trial Court Opinion, 1/15/10, at 14–15. Appellees appealed, and Appellant cross-appealed.

The Superior Court reversed in an unpublished panel decision. *Alkhafaji v. TIAA–CREF*, Nos. 287 and 363 WDA 2010, unpublished memorandum (Pa.Super. filed February 14, 2011). The court concluded the facts of this case were "factually indistinguishable" from *Carruthers v. New York Life*, 290 Pa.Super. 54, 434 A.2d 125 (1981). *Alkhafaji*, at 7. The court reasoned that, in the instant matter, like in *Carruthers*, the decedent attempted to change the beneficiaries via his will; however, the court interpreted *Carruthers* as establishing that a beneficiary change could not be made in this fashion, ruling that, "under *Carruthers*, the will could not operate to change

beneficiary status, nor could it be deemed as substantial compliance with the policy company's notice requirements." *Alkhafaji*, at 7. The court found that decedent had previously changed the beneficiaries on these annuities in compliance with the marital settlement agreement and, thus, was aware of the procedures ostensibly required by the annuities for changing beneficiaries. Further, the court observed that more than two months elapsed from the time decedent executed his will until the time of his death, which it deemed sufficient time to inform TIAA–CREF of his desire to change his beneficiaries, but he had not done so. The court found no evidence that decedent's hospitalization or condition had impeded him from making such contact with TIAA–CREF. Thus, the court concluded, "[i]n the absence of any evidence that Decedent took any measure to provide notice to the policy company, independent of the will, we cannot conclude that Decedent did all he reasonably could under the circumstances to comply with the terms of his policy." *Id.* at 8. Hence, the court reversed the trial court's order of distribution and ordered the proceeds of the annuities be distributed to the beneficiaries listed therein.

Our Court granted Appellant's petition for allowance of appeal, limited to the following question:

> Did the Superior Court err when it reversed the decision of the lower court and held that a change of beneficiary by will was not, as a matter of law, permitted when the notice provision of TIAA–CREF annuity contracts did not clearly and unambiguously preclude a beneficiary designation by will?

*Alkhafaji v. TIAA–CREF*, 612 Pa. 311, 30 A.3d 1100 (2011) (order).[4]

4. Appellant raises, for the first time on appeal, the question of whether New York law should apply to interpretation of the change of beneficiary provisions for four of the six annuities at issue. However, by failing to raise any such contention below, as Appellees note, I consider Appellant to have waived any objection to interpreting the change in beneficiary provisions contained in those four annuities in accordance with Pennsylvania law. *See generally* Pa.R.A.P. 302(a) ("Issues not

Appellant focuses her argument to our Court, principally, on what she contends was the Superior Court's error in relying on its *Carruthers* decision as controlling the outcome of this case. She highlights what she asserts are critical differences between the annuity language at issue in the present case governing a change in beneficiary and that of the policy in *Carruthers*, namely the fact that the policy at issue in *Carruthers* required **recordation** by the insurer of the insured's written notice of the change in beneficiary in order for it to be effective, whereas the six annuities herein required only that TIAA–CREF **receive** the notice of change in beneficiary, and, critically, also contained a provision, not contained in the policy in *Carruthers*, that allowed the written notice of change in beneficiary to take effect "whether or not the signer is living." Appellant's Brief at 16. Appellant asserts that this additional language, as well as the failure of TIAA–CREF to require a specific form of notice, "weighs heavily against the Superior Court's holding that as a matter of law a change of beneficiary could not be effectuated by will." *Id.*

Appellant argues that the Superior Court essentially read a prohibition against changing the beneficiary by will into the contract, which was improper for it to do as neither party intended to include such a provision. Appellant contends that doing so was particularly egregious, given that TIAA–CREF

raised in the lower court are waived and cannot be raised for the first time on appeal.").

Further, although Appellees advance arguments regarding whether the specific language used in the will was sufficiently precise enough to enable an insurer such as TIAA–CREF to discern exactly which annuities it was to distribute, and, also, the correct apportionment of the proceeds of the annuities among the beneficiaries designated in the will—arguments Justice Baer addresses in his Opinion in Support of Reversal—I do not opine on them. These fact-intensive questions were not raised by Appellant in her petition for allowance of appeal, and our grant of review was, accordingly, restricted to the narrow legal question presented by Appellant in her petition which was whether the Superior Court erred in concluding as a matter of law that a will could not change the beneficiary of an annuity policy when the policy did not prohibit that manner of change. Additionally, having interpleaded the proceeds of the annuities, TIAA–CREF does not presently contest the adequacy of the specific language used in the will to accomplish a change of beneficiary.

was protected by other contractual provisions limiting its liability for beneficiary changes and allowing it the right to seek interpleader of the policy proceeds. Appellant maintains that, since the contract language of the policy at issue is clear and unambiguous in that it does not bar a change in beneficiary by will, we should give effect to its provisions and honor the decedent's request as expressed in his will. To the extent that *Carruthers* calls for a contrary conclusion, Appellant suggests it should be overruled.

Appellant additionally suggests that TIAA–CREF has waived strict compliance with the policy's notification provisions for a change in beneficiary, as it has taken no position before either the lower courts or our Court about who is the proper beneficiary.

Appellees respond by first discussing *Sproat v. Travelers' Ins. Co.*, 289 Pa. 351, 137 A. 621 (1927), in which this Court held that, because an insurance policy required the insurance company to both give its consent to a change of beneficiary, and to record the change on the policy itself, and since decedent merely signed change of beneficiary forms he had requested from the company, but never filled them in or transmitted them to the company prior to his death, the decedent did not do all that he reasonably could have done to effectuate the change of beneficiary; thus, the will did not operate, post-death, to change the beneficiary. Relevant to the issue at bar, Appellees contend that this decision established that evidence of a deceased policyholder's mere attempt to change a beneficiary is not enough to do so if he takes no action to inform the insurance company of the desire to make the change.

Appellees further assert that the factual circumstances and legal principles of *Carruthers* most closely parallel the instant matter. Appellees point out that the decedent, like the deceased policyholder in *Carruthers*, knew about the change in beneficiary procedures that TIAA–CREF required, since he utilized them on three prior occasions, yet, despite being of sound mind in the months leading up to his death, he never provided TIAA–CREF with notice of his intent to change

beneficiaries. Also, Appellees suggest that the furnishing of the will to TIAA–CREF after decedent's death was not a request to change beneficiaries, but, in actuality, constituted a demand by the representative of decedent's estate for payment of the insurance proceeds.

Appellees additionally argue that the language in the TIAA–CREF policy requires that notice be given in a manner "satisfactory" to it, which was similar to the policy language in *Carruthers* that required notice be given in a manner specified by the insurer, and that the Superior Court correctly found that decedent "did not provide notice which would satisfy a reasonable insurer in TIAA–CREF's position." Appellees' Brief at 15. Appellees maintain that the policy language indicating such notice was effective "whether or not the signer is living" at the time TIAA–CREF receives it is only intended to cover situations where the insured took active steps to give notice to the insurer of his or her desire to change beneficiaries, but then passed away before the notice was received by the insurer, or was even sent. Appellees reiterate that the decedent took no active steps to give notice to TIAA–CREF before he died.

Appellees interpret the Superior Court ruling as not precluding an individual from changing beneficiaries by will; rather, in their view, it merely held that the decedent, in this instance, failed to take the necessary notification steps that his annuities required. Appellees proffer that, in any event, we should hold, as a matter of sound public policy, that a change of beneficiary should not be permitted to occur via will. Appellees aver that this constitutes an improper attempt to use a probate instrument to take control of a life insurance policy—a non-probate asset. Referencing 20 Pa.C.S.A. § 6108(a), which states that designation of beneficiaries under an annuity contract "shall not be considered testamentary and shall not be subject to any law governing the transfer of property by will," Appellees suggest allowing this type of change of beneficiary will have the practical effect of disrupting the beneficiary designations which all insurance companies

have on file and result in virtually every life insurance policy having to be probated.

Appellees also contend that TIAA–CREF never waived its right to strict enforcement of its notice provisions by interpleading the funds at issue here. Appellees discuss *Riley v. Wirth*, 313 Pa. 362, 366, 169 A. 139, 140 (1933), in which our Court held that, since an insurance policy did not require the insurer's approval of a new designation of beneficiary, nor endorsement of the change on the policy itself, the insurer's interpleading of proceeds of the policy into court "is conclusive proof of waiver" by the insurer of strict compliance with notice provisions of the policy. Appellees maintain that Riley distinguished between cases in which the notice requirement was merely administrative in nature, and, thus, for the benefit of the insurance company, from cases such as *Sproat*, in which insurers retained the right to approve any change in the beneficiary. Appellees suggest that TIAA–CREF, by using the policy language it chose, specifically reserved the right to receive notice in a form which was satisfactory to it, and, hence, retained discretion under the policy to approve or disallow the beneficiary change since the change was expressly contingent on the policy holder adhering to those notice provisions. Consequently, Appellees assert that TIAA–CREF has not waived its right to contest the form of the beneficiary change, even though it currently takes no position on who should be deemed the beneficiary.

Under the relevant governing legal principles our Court has established regarding the interpretation of language in annuity contracts, retirement annuities such as the ones at issue in this case are deemed to be contracts made between the holder and the issuing insurance/annuity company. *Estate of Ravdin*, 484 Pa. 562, 569 n. 10, 400 A.2d 591, 595 n. 10 (1978). Interpreting an insurance contract involves addressing a question of law, so the proper standard of review is *de novo*, which does not require deference to the legal determinations of the lower tribunals. *Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 155, 938 A.2d 286, 290 (2007).

In accordance with basic rules of contract interpretation, it is the mutual intent of the parties at the time they entered into the insurance contract which control its construction. *American and Foreign Ins. Co. v. Jerry's Sport Center Inc.*, 606 Pa. 584, 608, 2 A.3d 526, 540 (2010). Such intent may be discerned from the written language of the insurance contract. *Id.* If the written language of the policy is clear and unambiguous, then the policy language is to be given effect. *Prudential Prop. and Cas. Ins. Co. v. Sartno*, 588 Pa. 205, 212, 903 A.2d 1170, 1174 (2006).

Any analysis of the question our Court accepted for review must necessarily begin with a discussion of our 1927 decision in *Sproat, supra,* which is the seminal case in this area. The central issue in that case concerned whether the deceased holder of a life insurance policy[5] effectuated a change in his designated beneficiary prior to his death. The change of beneficiary clause in the deceased's policy specified that a change in beneficiary would take effect only when the insurance company gave its written consent, and it also required that both the beneficiary change and consent be noted on the insurance policy itself by the company at its home office. The deceased, who had changed beneficiaries on the policy once before, wrote to the insurance company to obtain change of beneficiary forms; however, when he received the forms, he signed them but did not fill them out, nor transmit them to the company. The deceased died six months later, and the forms were discovered with other of the deceased's personal papers.

Our Court noted, as a general matter, "[i]n order to affect a change of beneficiary, the mode prescribed by the policy must be followed." *Sproat*, 289 Pa. at 354, 137 A. at 622. However, our Court also specified that rigid compliance was not required; rather, the policyholder will be deemed to have effectuated a change in beneficiary whenever he or she achieves substantial compliance with the policy requirements governing such changes, i.e., "made every reasonable effort to effect a

5. Insurance policies, like annuities, are deemed contracts between the insured and the insurance company. *American and Foreign Insurance Co., supra.*

change of beneficiary." *Id.* Applying that principle, we ruled that the signed forms, in and of themselves, were insufficient to change the beneficiary, as the deceased made no efforts to have the forms delivered to the company, despite having six months to do so, and the forms, being otherwise blank except for the deceased's signature, did not refer to any specific insurance policy. Consequently, the deceased's intent to change beneficiaries could not be discerned merely from his signing of the forms.

Subsequently, in *Riley, supra,* our Court clarified that *Sproat* did not require strict compliance with provisions of an insurance policy that were included solely for the benefit of the insurance company. In that case, the change of beneficiary clause in the insurance policy required that the insured give written notice of the change to the company, and that the change forms, along with the policy, be filed with the company at its head office. The clause also stated that the company would only be charged with notice of a change whenever it had noted the change on the policy itself.

The holder of the policy completed the change in beneficiary forms and had them delivered to the company before her death, but she could not obtain the policy itself, as it was in the hands of the former beneficiary and, due to the holder's grave illness, she did not request its return. Despite the fact that the policy was not delivered to the company along with the change forms, our Court, nevertheless, concluded that the holder made every reasonable effort under the circumstances to change the beneficiary before she died. We noted that the change provision of the policy, unlike the one in *Sproat,* did not require the consent of the insurance company to the beneficiary change, nor written notation of the change on the policy in order for it to take effect. We regarded the notice provision as being solely for the insurance company's benefit and, hence, waivable by the company, and we found "conclusive proof of waiver" by the insurance company's act of paying the policy proceeds into court for distribution through interpleader. *Riley,* 313 Pa. at 366, 169 A. at 140.

In *Ruggeri v. Griffiths,* 315 Pa. 455, 173 A. 396 (1934), our Court relied on *Riley* to hold that, even though an insurance company did not effectuate an insured's desire to change his beneficiary until after the insured died, the change would, nevertheless, be given effect, since the evidence showed that the insured had intended to change the beneficiaries before he died. Later, in *Breckline v. Metropolitan Life Ins. Co.,* 406 Pa. 573, 577, 178 A.2d 748, 750 (1962), we reaffirmed this precept and held that, whenever a policy requires written notice to the insurer, but does not specify a time for filing that notice, such notice will still be effective even when filed after the death of the insured—so long as the insured made "every reasonable effort . . . to comply with the requirements of the policy."

Our Court has never heretofore addressed the precise question of whether a will may constitute a valid form of notice to an insurer to change the beneficiary of an annuity contract or life insurance policy; however, the Superior Court considered this question in *Carruthers.* In that case, the change of beneficiary provision of the life insurance policy provided that a beneficiary could be changed "only by a written notice received by or on behalf of New York Life" and that a change would not become effective unless recorded by the insurance company. 434 A.2d at 127. During the time he was covered under this policy, the deceased twice changed his designated beneficiary. *Id.* at 126. Prior to his death, the deceased executed a holographic will which stated, in relevant part, that "all insurance . . . is hereby changed to read willed to [my brother.]" *Id.* After the deceased had passed away, an attorney for the deceased's brother sent the insurance company a letter, along with a copy of the will, and demanded payment of the annuity proceeds. The insurer refused payment and the trial court upheld that action, ruling that the letter and the will did not make a valid change in beneficiary.

In the matter *sub judice,* the Superior Court acknowledged the holding of our Court in *Sproat,* as reaffirmed in Riley, that the mode prescribed by the insurance policy for a change in beneficiary must be followed in order to effectuate a change in

beneficiary. The court likewise noted that the language of the policy in question, which it conceded was "general and ambiguous," 434 A.2d at 127, did not require any specific form of notice be provided to the insurance company in order for a change in beneficiary to be accomplished. It also recognized that, under *Breckline*, there was no requirement that the insurer receive notice of the change prior to the insured's death for it to take effect. Nevertheless, the Superior Court, purporting to be acting in reliance on our Court's precedent, determined that the deceased had not substantially complied with the policy's change in beneficiary provision, and sweepingly held that "neither the letter nor the will, nor both together, could act as notice of a change of beneficiary." 434 A.2d at 127. The court, therefore, affirmed the lower court's decision.

As set forth *supra*, in determining that decedent's will in the instant matter could not change the beneficiary on decedent's annuities, the Superior Court deemed this case to be "factually indistinguishable" from *Carruthers* and that, "under *Carruthers*, the will could not operate to change beneficiary status, nor could it be deemed as substantial compliance with the policy company's notice requirement," *Alkhafaji*, at 7. Accordingly, contrary to Appellees' contention, which Justice Saylor endorses in his Opinion in Support of Affirmance, I perceive the Superior Court as interpreting *Carruthers* to stand for the proposition that a will, as a matter of law, cannot operate to change the beneficiary of an annuity policy. I conclude such a legal precept should be expressly rejected, however, as it stems from the Superior Court's apparent erroneous belief, expressed in *Carruthers*, that our decisions in *Sproat* and *Riley* compel such a conclusion. I do not, however, read those cases, nor any other decision of our Court, to stand for the proposition that a will, as a matter of law, can never effectuate a change in the beneficiary of a life insurance policy or annuity contract, or that the presentation of a will to an annuity or insurance company after death cannot, as a matter of law, constitute substantial compliance with a change of beneficiary provision in an insured's annuity

contract or life insurance policy. I would, therefore, hereby disapprove *Carruthers.*[6]

I further find no merit in Appellees' additional policy argu-

6. Contrary to the position taken by Justice Eakin in his Opinion in Support of Affirmance, I conclude that decedent's use of a will delivered to TIAA–CREF after his death was in accord with the specific terms of the change of beneficiary clauses of the annuities at issue. Construing the plain language of those change of beneficiary clauses, and giving their words their accepted and ordinary meaning, *Donegal, supra,* all that these clauses required decedent to do in order to validly change his designated beneficiaries was: first, that he furnish TIAA–CREF with written notice of his designated changes; second, that he sign such notice; third, that such written and signed notice be satisfactory to TIAA–CREF; and, fourth, that said written and signed notice be received by TIAA–CREF at its home office in New York. *See supra,* note 3 (reciting terms of annuities' change of beneficiary clauses).

Regarding whether decedent's signed will was an acceptable mode of written notice, it is significant that the change of beneficiary clauses of the annuities at issue did not require the annuitant to utilize any specific type of preprinted form to change beneficiaries, nor did these clauses otherwise specify or restrict the type of written notice an annuitant could use to make a beneficiary change. The mere fact that decedent had previously executed another written instrument to change his beneficiaries—the marital settlement agreement—did not mean that he could not, thereafter, use a different method of written notice to change his designated beneficiaries again.

Further, the instant change of beneficiary clauses did not require that written notice of an annuitant's desired change be delivered to TIAA–CREF at its offices during the annuitant's lifetime, or that the annuitant himself effectuate delivery while he or she was alive. As previously mentioned, *see supra* at n. 3, and highlighted by Justice Baer in his Opinion in Support of Reversal, *see* Opinion in Support of Reversal (Baer, J.) at 4, the language of the change of beneficiary clauses specifically permitted a change in beneficiary to take effect **any time** TIAA–CREF receives the written change of beneficiary request at its New York headquarters, and the clauses explicitly provided that this change would be implemented even if the annuitant had died by the time TIAA–CREF received the written notice. So, in my view, the mere fact that the will was mailed to TIAA–CREF after decedent's death is of no moment in this case.

With respect to the question of whether the notice was satisfactory to TIAA–CREF, having interpleaded the proceeds of the annuities, TIAA–CREF does not presently assert that decedent's use of the will was not a satisfactory form of written notice to it. Moreover, and in any event, since the annuities did not require TIAA–CREF give its approval for a beneficiary change to take place, as the insurance company had required in *Sproat,* and in light of the fact that TIAA–CREF has presently interpleaded the proceeds of the annuities into court, under *Riley* it has waived any right in these proceedings to reject decedent's will as an unsatisfactory form of written notice to it.

ment, based on 20 Pa.C.S.A. § 6108,[7] that the type of change in beneficiary which occurred in the case *sub judice* should be prohibited, as it represents an attempt to "take control" of an annuity contract through the will, which Appellee contends would have the effect of improperly forcing distribution of the proceeds of the annuity contract through the probate process. I disagree. Section 6108, on its face, merely speaks to the **effect** such a beneficiary designation of an annuity contract has on the manner in which the proceeds of the annuity contract will be distributed, namely, it establishes that those proceeds are not considered assets of the decedent's estate subject to distribution in accordance with the laws governing transfer of property by will. However, where a decedent's will serves only as the vehicle by which he or she changes the beneficiaries for an annuity contract, it does not contravene Section 6108, since the manner of distribution of the proceeds of the annuity contract is still governed by the terms of the annuities themselves and, therefore, remains outside the probate process.

7. Section 6108 provides:

**§ 6108. Designation of beneficiaries of insurance or employee death benefits not testamentary**

(a) **In general.**—The designation of beneficiaries of life insurance, annuity or endowment contracts, or of any agreement entered into by an insurance company in connection therewith, supplemental thereto or in settlement thereof, and the designation of beneficiaries of benefits payable upon or after the death of a participant under any pension, bonus, profit-sharing, retirement annuity, or other employee-benefit plan, shall not be considered testamentary and shall not be subject to any law governing the transfer of property by will. This section shall apply regardless of whether the insurance contract or the employee-benefit plan designates the ultimate beneficiaries or makes the proceeds payable, directly or indirectly, to a trustee of a trust under a will or under a separate trust instrument which designates the ultimate beneficiaries, and regardless of whether any such trust is amendable or revocable, or both, or is funded or unfunded, and notwithstanding a reservation to the settlor of all rights of ownership in the insurance contracts or under the employee-benefit plans. Unless otherwise expressly provided in the conveyance, funds or other property so passing to a trust under a will shall become and be a part of the testamentary trust to be administered and disposed of in accordance with the provisions thereof, without forming any part of the testator's estate for administration by his personal representative.

20 Pa.C.S.A. § 6108(a).

Inasmuch as I discern no general impediment, as a matter of law, to a change in the beneficiary of an annuity by will, and there is no dispute between the parties that the annuities at issue in this appeal did not prohibit a change of beneficiary by will, under these circumstances I agree with the esteemed trial judge that decedent's use of his will to change the beneficiaries of his annuities was a permissible mode of changing beneficiaries. I would therefore reverse the order of the Superior Court and remand this case to that court for consideration of the remaining issues raised in Appellee's direct appeal and Appellant's cross-appeal, which that court did not address.

Justices BAER and McCAFFERY join this opinion.