**In re ESTATE OF Eugene A. GOLAS, Deceased.**

**Appeal of Sylvia Golas.**

Superior Court of Pennsylvania.

Argued Feb. 9, 2000.

Filed April 19, 2000.

Randal S. White, Doylestown, for appellant.

Joseph P. Caracappa, Fairless Hills, for appellee.

Before MUSMANNO, ORIE MELVIN and BROSKY, JJ.

BROSKY, J.

¶ 1 Sylvia Golas, sister of the decedent Eugene A. Golas, appeals from the entry of a final decree by the trial court, Orphans' Court Division, ordering distribution of the funds of an Individual Retirement Account (IRA) to the executors of his estate. She contends that the trial court erred in concluding that the decedent effected a change in the beneficiary of that IRA from herself to the estate. We affirm.

¶ 2 The facts as determined by the trial court are as follows. The decedent, age sixty four at his death, had never married and was childless. He was first diagnosed with and began treatment for pancreatic cancer in late 1996. In December 1996, Appellant moved temporarily from her home in California to stay with the decedent, where she remained until sometime after his death.

¶ 3 In January 1997, the decedent established an IRA at Bryn Mawr Investment Group in Montgomery County, Pennsylvania.[1] The IRA Agreement and Plan Document executed at that time designated Appellant as the primary beneficiary of the IRA, and specifically provides that "[t]he Beneficiary designation can only be made on a form prescribed by the Custodian (Bryn Mawr) and it will only be effective when it is filed with the Custodian during the Participant's lifetime." Exhibit P–1.

¶ 4 In April 1997, Mr. Golas met with his attorney to prepare a will, and Appellant was present for this meeting at the decedent's request. At the conference the decedent explained certain specific bequests he wished to make, including a gift of $100,000 to Appellant, as well as the establishment of an educational trust fund to benefit the children of his nieces and nephews. He and the attorney discussed changing the designation of beneficiary of three of his assets to fund that trust: a savings plan fund, a life insurance policy, and his IRA. The Bryn Mawr account was his only IRA.

¶ 5 Decedent executed his will on May 1, 1997. On that date he also executed two separate forms to change the beneficiary designation of the savings plan and the life insurance policy to "Estate of E.A. Golas." Also on that date, the decedent telephoned his broker at the Bryn Mawr office, only to learn he was on vacation. The decedent spoke with another broker, explaining that he wished to change the beneficiary of his IRA. Mr. Golas asked whether it would be possible to do so via the telephone, and when told he could not, he requested the required form. He also asked how to designate an estate as the beneficiary. This broker told him that he would put the proper form in the mail to him that day, and that he need only write "Estate of Eugene Golas" on the form.

¶ 6 The decedent was admitted to the hospital on May 4, 1997, suffering from complications related to his cancer. On May 6, 1997 during his hospital stay, he again called his regular broker, who had returned from vacation. Mr. Golas was quite upset that he had not yet received the promised change of beneficiary form. He was assured by his broker that a new form would be mailed out immediately. However, Mr. Golas died in the hospital on May 8, 1997 without having received or executed the change in beneficiary form for his IRA.

¶ 7 The decedent's will was submitted for probate on May 17, 1997. Appellees, who are the co-executors of the estate, were also named as trustees of the education fund. The will made several specific bequests, including the $100,000 to Appellant, and the entire residue was given to create the educational trust. The executors sought to have the proceeds of the IRA included in the estate, which Appellant opposed. Hearing was held by the

1. This account was actually a transfer of an existing IRA account with a different broker- age firm.

trial court on September 16, 1997, and a *decree nisi* was thereafter entered, directing that the funds from the IRA be distributed to the executors on behalf of the estate.[2] Appellant filed exceptions, which the trial court dismissed, and the *decree nisi* was made a final decree. This appeal followed.

¶ 8 The issues presented are whether the trial court erred when it determined that Mr. Golas "substantially complied" with the change of beneficiary provision of his IRA Agreement, and whether sufficient evidence was presented to support the conclusion that the decedent intended to change the beneficiary of the IRA from his sister to his estate.

¶ 9 "When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion." *Estate of Harrison*, 745 A.2d 676 (Pa.Super.2000).

■■■ ¶ 10 In general, one must follow the requirements specified by the policy in order to validly change the beneficiary.[3] *Carruthers v. $21,000*, 290 Pa.Super. 54, 434 A.2d 125 (1981). However, the law in this Commonwealth is also clear that "[t]he intent of the insured will be given effect if he does all that he reasonably can under the circumstances to comply with the terms of the policy which permit a change of beneficiary." *Carruthers* at 127; *Cipriani v. Sun Life Insurance Co.*, 757

F.2d 78 (3rd Cir.1985), *quoting Provident Mutual Life Insurance Company of Philadelphia v. Ehrlich*, 508 F.2d 129 (3rd Cir. 1975); *see also Dale v. Philadelphia Board of Pensions and Retirement*, 702 A.2d 1160 (Pa.Cmwlth.1997). Most U.S. jurisdictions follow this equitable principle. *See, e.g., Dennis v. Aetna Life Insurance and Annuity Co.*, 873 F.Supp. 1000 (E.D.Va.1995)(collecting cases). We also note that the formal procedures which an insurance company requires in order to effect a change of beneficiary are in place to protect the company. *Ehrlich, supra.* Thus an original beneficiary is without the right to insist upon strict compliance with those requirements. *Id.*

■■■ ¶ 11 The trial court concluded that the decedent intended to change the beneficiary of his IRA from Appellant to his estate, and that he substantially complied with the requirements set forth by the plan. We shall first address the issue of whether sufficient evidence was presented that he had the requisite intent. There is no question that the decedent sought to establish a sizable educational trust which would require significant funds. He had succeeded in arranging for the proceeds of his savings plan and insurance policy to be used for that trust. The testimony was undisputed, and Appellant concedes in her brief, that Mr. Golas told his attorney (in Appellant's presence), as well as two brokers from Bryn Mawr, that he wished to change the beneficiary designation of his IRA. He was attempting to make this change to the IRA fund at the same time he changed the beneficiary of the other two plans to his estate. It is also clear that he asked one of the brokers of the

---

**2.** The value of the account at the time of Mr. Golas' death was approximately $400,000.

**3.** The parties and the trial court have relied on analogous principles generally applicable to insurance policies. Research has revealed that in relevant cases specifically involving beneficiaries to a retirement plan, those same principles have been applied by federal courts and state courts of other jurisdictions. *See, e.g., Phoenix Mutual Life Insurance Company*

*v. Adams*, 30 F.3d 554 (4th Cir.1994)(interpreting ERISA); *Stickney v. Muhlenberg College TIAA–CREF Retirement Plan*, 896 F.Supp. 412 (3rd Cir.1995)(same); *IDS Life Insurance Co. v. Estate of Groshong*, 112 Idaho 847, 736 P.2d 1301 (1987); *State Employees' Retirement System of Illinois v. Taylor*, 131 Ill. App.3d 997, 87 Ill.Dec. 47, 476 N.E.2d 749 (1985). We see no reason not to apply those analogous principles.

IRA account, as well as his attorney, how to designate his estate as beneficiary. Additionally, his will included a specific bequest to Appellant of $100,000, and she conceded at the hearing that the decedent had told her in April 1997 that she "had enough [money] of [her] own." We agree with the conclusion of the trial court that this evidence sufficiently established that Mr. Golas intended to change the beneficiary of his IRA from Appellant to his estate. We find no abuse of discretion or error by the trial court.

■ ¶ 12 We next decide whether the actions of this decedent, under the facts of this particular case, constitute "substantial compliance." We find guidance in the numerous state and federal cases which have applied this principle, ruling that where a decedent had executed a change in beneficiary form or equivalent writing, but some ministerial act by the insurance company was not completed through no fault of the decedent, effect would be given to the intent of the policyholder and the change in beneficiary was valid. *See, e.g., Metropolitan Life Insurance Co. v. Bush*, 154 F.3d 1149 (10 th Cir.1998)(change in beneficiary form completed but not received by company prior to death); *Phoenix Mutual Life Insurance Company v. Adams, supra* n. 3 (decedent executed forms but neglected to write name of new beneficiary on blank line; company representative asked for new wife's name and assured him that the change would be made, but failed to do so); *Connecticut General Life Insurance Co. v. Gulley*, 668 F.2d 325 (7 th Cir.1982), *cert. denied sub nom. Balsley v. Gulley*, 456 U.S. 974, 102 S.Ct. 2237, 72 L.Ed.2d 848 (1982)(decedent filled out form but left it with beneficiary, his daughter, to pick up

at later date; he died one week later without having returned for form); *First Capital Life Insurance Co. v. AAA Communications, Inc.*, 906 F.Supp. 1546 (N.D.Ga. 1995)(change of beneficiary form not received by registrar until three weeks after decedent's death); *IDS Life Insurance Co., supra* n. 3 (decedent filled out forms and died two weeks later; forms found on his desk); *State Employees' Retirement System of Illinois, supra* n.3 (decedent sent letter asking that change of beneficiary be made to his daughter; company sent appropriate form, but it was not returned, and decedent died several months later).[4]

¶ 13 Also instructive is *Prudential Insurance Co. v. Bannister*, 448 F.Supp. 807 (W.D.Pa.1978), where the decedent, suffering from a terminal illness, executed a change in beneficiary form on his life insurance and returned it to his local insurance office; however, he neglected to return the policy for endorsement. The decedent was aware of the additional requirement of endorsing the policy from past transactions, but never was notified that his request for change in beneficiary had not been made because of his failure to return the policy. The court gave consideration to the decedent's illness and extensive treatment therefor, recognizing his probable and understandable preoccupation with his medical condition, and concluded that he made all reasonable efforts under the circumstances to change his beneficiary. Effect was thus given to his intended change in beneficiary.

¶ 14 "The essential inquiry is whether . . . the insured intended to execute a change to such an extent that effect should be given it[.]" *Id.* at 809. In the case at

4. *See also Ehrlich, supra*, where the decedent made two written requests of the company which had issued him a life insurance policy that it change the beneficiary from his ex-wife to his current wife, and both times requested the proper forms to do so. The insurance company refused to provide the forms or to make the change, on the basis of an existing common pleas court order directing seizure of decedent's assets to satisfy a support obli-

gation. The *Ehrlich* court stated that the right to change a beneficiary was personal to the decedent, and could not be abrogated by the insurance company. It further concluded that the decedent had made every reasonable effort to comply with the insurance company's requirements to change his beneficiary, and that he substantially complied with its provisions.

bar, the trial court concluded that Mr. Golas made every reasonable effort under the circumstances to comply with the requirements of the IRA agreement. We agree. While undergoing treatment in the latter stages of his terminal cancer, he was attempting to make provision for the disposition of his estate according to his wishes. Twice he explained to Bryn Mawr that he desired to change his IRA beneficiary, and asked that the appropriate document be forwarded to him. Unfortunately, not able to enjoy the luxury of time spent waiting for the mail to arrive, he died before the actual forms were received and could be executed. We agree that his clear intent was to name his estate as the beneficiary of his IRA, and that he did everything he possibly could to formally comply with Bryn Mawr's procedure to effect the change. The absence of any writing to indicate this particular change is of no moment under these circumstances.[5] It would be wholly fallacious to expect Mr. Golas to have done any more than he did to accomplish the change, particularly in light of his rapidly deteriorating health.

¶ 15 In conclusion, we agree that the decedent's intent has been clearly established, that he substantially complied with the provisions for changing his beneficiary, and that effect should be given to his intent. *See id.* We therefore conclude that the decree of the trial court is amply supported by this record, and that no error of law nor abuse of discretion was committed in directing that the proceeds of decedent's IRA be distributed to the estate.

¶ 16 Decree affirmed.

---

5. *Cf. Empire General Life Insurance Co. v. Silverman*, 135 Wis.2d 143, 399 N.W.2d 910 (1987), where the decedent orally requested his attorney to change the beneficiary on his life insurance policy to "my family." The court determined that the absence of a writing was not fatal; however, it held that the designation "my family" was not sufficiently specific to identify a particular individual or entity.