GRAY v. FIDELITY BROKERAGE SERVICES
2023 OK 7
Case Number: 119317
Decided: 02/07/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 7, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

AMY GRAY, JERRY DAVID DICKMAN, JEFFERY SCOTT DICKMAN, and DEBORAH HENDERSON, Plaintiffs/Appellants,
v.
FIDELITY BROKERAGE SERVICES, LLC, FIDELITY MANAGEMENT TRUST COMPANY, LINDA JEANNE DICKMAN, LYNNWOOD MOORE, as Trustee of the J. Jerry Dickman, Inc. Profit Sharing Plan, and J. JERRY DICKMAN, INC., as Administrator of the J. Jerry Dickman, Inc. Profit Sharing Plan, Defendants/Appellees.
ON CERTIORARI FROM THE COURT OF CIVIL APPEALS, DIVISION III
¶0 Appellants seek a declaratory judgment, recognizing them as the primary beneficiaries of a profit-sharing plan and a retirement account belonging to the decedent, their father, pursuant to an antenuptial agreement and beneficiary designations. Appellee, the wife of the decedent, counterclaimed, seeking an order declaring her the sole beneficiary based on the order of succession. The district court granted summary declaratory judgment in favor of the wife, determining she was the sole beneficiary of both accounts. The decedent's children timely appealed, and the Court of Civil Appeals reversed and remanded with instructions. This Court granted certiorari. We hold that the decedent had exclusive rights to the profit-sharing plan per the antenuptial agreement, including the right to roll over its assets to a retirement account. Further, the Court reforms the beneficiary designations to disburse the retirement account funds per Decedent's intent. However, the remaining assets in the profit-sharing plan should be distributed per the plan's beneficiary designation.
COURT OF CIVIL APPEALS' OPINION VACATED;
DISTRICT COURT'S JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS. 
Lewis N. Carter, Stuart D. Campbell, and Jon E. Brightmire, Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, Oklahoma, for Appellants Amy Gray, Jerry David Dickman, and Deborah Henderson.
James C. Milton, Bryan J. Nowlin, and Natalie S. Sears, Hall Estill, Tulsa, Oklahoma, for Appellant Jeffrey Scott Dickman.
E. Andrew Johnson and Whitney Eschenheimer, Johnson & Jones, P.C., Tulsa, Oklahoma, for Appellant Jeffrey Scott Dickman.
Randall K. Calvert and Andrew R Davis, Calvert Law Firm, Oklahoma City, Oklahoma, for Appellee Linda Jeanne Dickman.
Elliot P. Anderson, Crowe & Dunlevy, Tulsa, Oklahoma, for Appellees Fidelity Brokerage Services LLC and Fidelity Management Trust Company.
Tony W. Haynie and C. Austin Birnie, Conner & Winters, LLP, Tulsa, Oklahoma, for Appellees Lynnwood Moore, as Trustee of the J. Jerry Dickman, Inc. Profit Sharing Plan and J. Jerry Dickman, Inc., as Administrator of the J. Jerry Dickman, Inc. Profit Sharing Plan.
Winchester, J.
¶1 Appellants Amy Gray, Jerry David Dickman, Jeffrey Scott Dickman, and Deborah Henderson (collectively Children) brought this action seeking an order declaring Children as the primary beneficiaries of a Profit-Sharing Plan (PSP) and an Individual Retirement Account (IRA) belonging to their father, J. Jerry Dickman (Decedent), based on the language in an antenuptial agreement and two beneficiary designations executed by Decedent. Appellee Linda Jeanne Dickman, the wife of Decedent (Wife), sought an order declaring her the sole beneficiary based on the order of succession. The district court granted summary declaratory judgment in favor of Wife, determining she was the sole beneficiary of both the PSP and IRA. Children timely appealed, and the Court of Civil Appeals (COCA) reversed and remanded with instructions. This Court granted certiorari.
¶2 The issues in this case center on the interpretation and interplay of an antenuptial agreement between Wife and Decedent and Decedent's beneficiary designations for both the PSP and IRA. Specifically, this Court must determine (1) whether the antenuptial agreement between Wife and Decedent was broad enough to cover the PSP and to waive any right Wife had to consent to the rollover of assets from the PSP to an IRA and to designate beneficiaries; (2) whether despite the antenuptial agreement, Wife's consent was necessary under federal law to roll over the plan's assets to an IRA and designate beneficiaries; (3) whether the Court should reform the IRA beneficiary designations to give effect to Decedent's intent; and (4) whether this Court should transfer the remaining assets maintained in the PSP to the IRA.
¶3 For the reasons stated herein, we hold that the antenuptial agreement between Wife and Decedent covered the PSP, making it Decedent's separate property. Decedent had exclusive rights to the PSP, including the right to designate beneficiaries. Wife's consent was not necessary under federal law because the PSP was not an ERISA plan. We further hold Decedent substantially complied with all the requirements to designate beneficiaries to his IRA account, and the Court exercises its equitable powers to reform the beneficiary designations to disburse the IRA funds per Decedent's intent. However, Decedent never initiated the process of transferring to the IRA the remaining assets maintained in the PSP. The remaining assets should therefore be distributed per the PSP beneficiary designation.
FACTS AND PROCEDURAL HISTORY
¶4 Decedent opened a PSP more than 20 years ago, which grew to approximately $13 million in value. Fidelity Brokerage Services, LLC and Fidelity Management Trust Company (collectively Fidelity) maintained a large portion of the PSP assets. Capital Advisors, Inc. (Capital) acted as an advisor to the PSP. On December 21, 2013, Decedent named Children to be equal beneficiaries of the PSP upon his death.
¶5 Decedent and Wife married on November 25, 2015. Prior to the marriage, Decedent and Wife entered into an antenuptial agreement, citing their advanced age, children from former marriages, and prior costly divorces. The agreement reserved to each party their respective property and discussed the net worth of Decedent, the majority of which was from his PSP. The agreement placed no limit on transfers during the marriage and was not intended to limit either party from taking the assets of the other by a will or intestate succession in the event of death.
¶6 In December 2017, Decedent executed a new beneficiary designation for the PSP, naming Children and Wife as equal beneficiaries of the PSP assets upon Decedent's death. Wife did not sign a post-marital waiver of the PSP assets nor did she sign any post-marital consent to the beneficiary designation.
¶7 While hospitalized in August 2019, Decedent met with his estate planning attorney and discussed a plan to roll over approximately $13 million from the PSP into an IRA. Decedent also sought to name Children and Wife as beneficiaries, designating $2.8 million each to his four children and the balance of approximately $1.8 million to Wife.
¶8 On August 30, 2019, Decedent executed the relevant IRA rollover documents. Wife was present at the time Decedent executed the documents and voiced no objection. Those documents included the IRA application as well as a beneficiary designation, which listed each of the four children as receiving $2.8 million and listed Wife as receiving the "balance."
¶9 The same day, Fidelity advised Capital that the designation of beneficiaries should be stated in percentage shares instead of dollar amounts. Capital then contacted Fidelity and advised that Decedent wanted to designate beneficiaries in dollar amounts rather than percentage shares. Fidelity instructed Capital that to fulfill Decedent's request, Decedent had to prepare a separate Letter of Authorization (LOA) with the designated beneficiaries and the dollar amounts Decedent desired each beneficiary to receive. Decedent executed an LOA listing the same beneficiaries and dollar amounts as the prior IRA beneficiary designation, prepared in accordance with Fidelity's instructions. The IRA was established and funded with approximately $10.2 million instead of the anticipated $13 million. This occurred because other assets valued at approximately $1.8 million were not maintained by Fidelity.
¶10 Decedent passed away two days later on September 2, 2019. At the time of Decedent's death, his attempted beneficiary designations exceeded the value of the IRA. Fidelity determined that the beneficiary designations were "Not in Good Order." Wife sought distribution of all the IRA funds to herself as the surviving spouse, and Children opposed her request. Due to the competing claims, Fidelity restricted distribution.
¶11 Children sought a declaratory judgment and injunctive relief, requesting that the district court declare each of them beneficiaries of the IRA up to $2.8 million per child and order the assets distributed. Children also sought to have the remaining PSP assets transferred to the IRA.
¶12 Wife counterclaimed and moved for summary judgment, arguing she was the sole beneficiary of both the PSP and IRA. She asserted she never consented to the rollover of the PSP assets to the IRA or to Decedent's beneficiary designations. Wife also contended Decedent's IRA beneficiary designations were invalid because they were refused by Fidelity and thus, as the surviving spouse, she should take as the primary IRA beneficiary per the agreement's standard order of succession.
¶13 Children, in turn, filed their own motion for summary judgment arguing that the antenuptial agreement prevents Wife from receiving PSP or IRA benefits as the surviving spouse and the benefits should pass to them as Decedent's named beneficiaries. The district court denied Children's motion and granted Wife's motion awarding Wife the funds in both the PSP and IRA. Children appealed.
¶14 COCA reversed the district court's grant of summary judgment to Wife and remanded for further proceedings. Wife filed a petition for rehearing, which COCA denied. We granted certiorari.
STANDARD OF REVIEW
¶15 Summary judgment resolves issues of law, and we review a district court's grant of summary judgment de novo. U.S. Bank, N.A. ex rel. Credit Suisse First Boston Heat 2005--4 v. Alexander, , ¶ 13, , 939. Using the de novo standard, we subject the record to a new and independent examination without regard to the trial court's reasoning or result. Gladstone v. Bartlesville Indep. Sch. Dist. No. 30, , ¶ 5, , 446. The Court has plenary, independent, and non-deferential authority to determine whether the district court erred in its legal rulings. State ex rel. Protective Health Servs. State Dep't of Health v. Vaughn, , ¶ 9, , 1064.
ANALYSIS
I. Decedent had the exclusive right to roll over the PSP assets to an IRA and designate beneficiaries.
¶16 Wife first contends that she is the sole beneficiary of all the assets in the PSP because per the plan language her consent was necessary to roll over the PSP assets to the IRA and to designate beneficiaries. Children counter that the antenuptial agreement between Wife and Decedent bars Wife from making any claim to the PSP assets. We agree with Children. The antenuptial agreement between Wife and Decedent was broad enough to bar Wife from making any claim to the PSP assets (including her consent for Decedent to roll over the plan assets to the IRA and to designate beneficiaries), except for those assets which the Decedent specifically granted to her per the beneficiary designation executed after their marriage.
¶17 Antenuptial agreements are contracts. ; Freeman v. Freeman, , ¶¶ 1-2, , 366-67. They are used to waive rights to property or in other ways alter the rights related to marriage, statutory or otherwise. See generally In re Estate of Cobb, , ¶ . An indispensable ingredient of an effective waiver is a freely exercised will to relinquish a known right; one is bound by a waiver of one's rights when made with full actual or constructive knowledge of the rights intended to be waived. Guinn v. Church of Christ Collinsville, , ¶ 29 n.42, , 777 n.42; Faulkenberry v. Kan. City S. Ry. Co., , ¶ 6, , 207.

¶18 Here, the PSP was specifically identified in the antenuptial agreement between Wife and Decedent. The agreement specified that Wife and Decedent acknowledged that the majority of Decedent's worth at the time of the marriage was in the PSP, and Decedent's financial statement was attached to the agreement. The PSP and its value were known to Wife when the antenuptial agreement was executed. Per the agreement, the PSP was Decedent's separate property, the same as it would be if he remained single and unmarried. Decedent had exclusive possession of the rights to the PSP, including the right to roll over the plan's assets and to designate beneficiaries.
¶19 Wife next argues that her consent was necessary under preemptive federal law for Decedent to designate other beneficiaries and her waiver of Decedent's PSP assets through the antenuptial agreement was ineffective. Although consent from a spouse is necessary under a qualified ERISA plan, the PSP was not an ERISA plan. A retirement plan is not covered by ERISA when a person is the sole shareholder and only employee of the corporation. There were no other employees covered under the PSP; Decedent was the sole trustee, administrator, and participant of the PSP. The cases cited by Wife rejecting a waiver of plan benefits based on an antenuptial agreement are inapplicable, and Wife's waiver of her claim to the PSP assets when she executed the antenuptial agreement is effective. Decedent therefore had the right to designate beneficiaries of the PSP, transfer the PSP funds to the IRA, and designate beneficiaries of the IRA without Wife's consent.
II. Decedent's IRA beneficiary designations should be reformed to give effect to Decedent's intent. 
¶20 Wife contends that Decedent's IRA beneficiary designations were invalid because Decedent did not follow the IRA agreement language when he used dollar amounts to indicate how the funds were to be dispersed to each beneficiary instead of percentage shares. We disagree. Decedent substantially complied with the requirements of the IRA agreement, and the IRA beneficiary designations should be reformed to give effect to Decedent's intent.
¶21 Oklahoma has recognized the doctrine of substantial compliance when the owner "has done all in his power to effect a change of beneficiar[y], and after his death only ministerial acts remain to be performed." Ivey v. Wood, , ¶¶ 23-24, , 626 (quoting Harjo v. Fox, , ¶ 9, , 301). We have applied this doctrine in the context of a beneficiary change for a life insurance policy and held that the acts and conduct of the insured are liberally viewed in favor of the insured in determining whether he did all within his power to comply with the terms of the policy to change his beneficiary. O'Neal v. O'Neal, , ¶ 8, , 597 (noting that the exceptions to the general rule that one must comply with policy requirements are if the insured had done all reasonably within his power to comply with the requirements of the policy or if the company waived compliance); Bowser v. Bowser, , ¶ 10, , 520 (holding the district court did not err in finding that the insured had done all he reasonably could to effect a change of beneficiaries in the policy).
¶22 We believe the doctrine of substantial compliance can be equally applied in the context of a beneficiary designation for an IRA. To illustrate, the Court has previously indicated that it saw no distinction between a life insurance policy and a state retirement account in designating beneficiaries. The Court held:
We see no reason to distinguish our treatment of a claim to funds as beneficiary of an insurance policy from a claim based on designation as beneficiary as recipient of retirement funds. In either case the contract runs between the party with the power to make the designation of beneficiary and the party having the obligation to pay over funds to the beneficiary.
Pepper v. Peacher, , ¶ 17, , 25. Life insurance policies, annuities, and IRAs are similar in the respect that they all arise from contractual relationships where one party agrees to pay a sum of money on a specified contingency to a designated person called a beneficiary. Id. The proceeds pass automatically to the beneficiary. However, the beneficiary's interest is revocable by the owner during the owner's life and contingent on the beneficiary being designated as such when the owner dies. Id. We see no logical reason why the substantial compliance doctrine should not apply to our present analysis. The remaining issue is whether Children provided sufficient evidence to meet the standard for substantial compliance concerning Decedent's designation of beneficiaries to his IRA.
¶23 In this case, Decedent's attempt to designate beneficiaries to his IRA comes within the purview of the doctrine. Decedent executed the relevant IRA rollover documents. Those documents included the IRA application as well as a beneficiary designation which listed each of the Children as receiving $2.8 million and listed Wife as receiving the "balance." When Fidelity advised that the beneficiary designation had to be reflected by a percentage share, Capital, on behalf of Decedent, inquired into whether Decedent could designate by a dollar amount instead of a percentage. Fidelity then instructed Decedent to draft an LOA, which Decedent completed. Two days later, Decedent passed away without any further communication from Fidelity. Decedent reasonably believed that he had complied with Fidelity's requirements and had no reason to believe that he had not properly designated beneficiaries for his IRA. Under the facts of this case, Decedent had done everything in his power to designate beneficiaries and followed Fidelity's instructions.
¶24 Further, exact compliance with the contractual requirements is not necessary when, as in this case, the custodian of the IRA waives compliance with those requirements. O'Neal, , ¶ 8, 141 P.2d at 597; Carson v. Carson, , ¶¶ 18-19, , 741. Decedent complied with the requirements in the IRA documents, which states that a beneficiary must be designated on the account application or in another form or manner acceptable to the custodian of the IRA. Fidelity communicated to Decedent that it was not necessary that he use a percentage in designating the amount to be dispersed to the beneficiaries and that he could designate a dollar amount by using an LOA, which he did. Fidelity took no position with respect to the parties' dispute and awaits a judicial determination of the proper payee. We also note that the formal procedures that a company requires to establish an IRA are in place to protect the company. See Bowser, , ¶ 8, 211 P.2d at 519. Thus, an individual contending to be a beneficiary is without the right to insist upon strict compliance with those requirements. Fidelity's waiver of its contractual requirement that a percentage be used allows the Court to disregard this formality and determine the proper payees based on an evaluation of the evidence of Decedent's intent.

¶25 The next issue we must address is how to disburse the funds of the IRA to the designated beneficiaries since the IRA is underfunded compared to the dollar amounts designated by Decedent. The Court has held that a written agreement may be reformed by a court of equity. Boettler v. Rothmire, , ¶¶ 16-17, , 514-15. The Court can use its equitable powers when the execution of an agreement is procured through a unilateral mistake, like in this case, on the part of Decedent. Smiley v. Jaggers, , ¶ 5, , 654. The goal of reformation for a mistake is to ensure that the intent of the Decedent is carried out and the parties are placed where they would have stood if the mistake had not occurred. Shoemaker v. Estate of Freeman, , ¶¶ 19-20, , 876; Griffin v. Griffin, , ¶ 14, , 813.
¶26 Both Capitol and Decedent believed that $13 million was to be transferred to the IRA. However, a mutual mistake in the belief that all the assets were maintained by Fidelity caused there to be underfunding of the IRA to disburse to the beneficiaries the dollar amounts written on the beneficiary designation. The Court reforms the beneficiary designation and converts the dollar amounts specified by Decedent to a percentage that is equal to what Decedent intended. The fact that less than $13 million was transferred to the IRA does not change Decedent's clear intent of whom he designated as beneficiaries. It is further undisputed that Decedent intended to give $2.8 million to each of the four children of the approximately $13 million in the PSP, which equates to 86% of the total amount in the PSP (or a 21.5% share to each of the four children). Likewise, 21.5% of the approximately $10.2 million transferred to the IRA should be distributed to each of Children, with the remainder 14% share going to Wife.
III. The Court will not use its equitable powers to transfer the remaining assets maintained in the PSP to the IRA. 
¶27 The final issue we must determine is whether this Court should transfer the remaining assets maintained in the PSP to the IRA. Children argue this Court has the equitable power to order this transference. However, Children are not requesting that this Court reform a contract but instead create a contract. An agreement to transfer the self-custody assets from the PSP to the IRA was never executed by Decedent. The PSP provides that a participant may request a lump-sum distribution. If the request is approved, the administrator must execute the proper documents to effect the distribution. None of these events occurred here. Therefore, Children's reliance on equitable reformation is misplaced with regard to the remaining assets in the PSP. Instead, the remaining assets in the PSP should be distributed per the beneficiary designation. Since the beneficiaries of the PSP are Children and Wife as equal beneficiaries, the remaining assets in the PSP should each be split equally among the beneficiaries.
CONCLUSION

¶28 Decedent had exclusive possession of the rights to his PSP, including the right to roll over the assets into an IRA and designate beneficiaries. Decedent substantially complied with all the requirements to designate beneficiaries to his IRA account, and the Court uses its equitable powers to reform the beneficiary designations to give Children a 21.5% percentage share that Decedent intended, with the remainder going to Wife. However, the remaining assets in the PSP should be distributed per the PSP beneficiary designation because Decedent never initiated the process of transferring to the IRA the remaining assets maintained in the PSP. Based upon our analysis, we reverse the district court's judgment in favor of Wife, and we remand for proceedings consistent with this opinion.
COURT OF CIVIL APPEALS' OPINION VACATED;
DISTRICT COURT'S JUDGMENT REVERSED
AND REMANDED WITH INSTRUCTIONS.
Kane, C.J., Rowe, V.C.J., Kauger, Winchester, Edmondson, Combs, Darby, and Kuehn, JJ., concur.
Gurich, J., recused.
FOOTNOTES
 Decedent's estate lawyer confirmed that Decedent's intent was to give Children an amount that would avoid each of them having to pay any estate taxes.
 We note that neither Wife nor Children raised any issue concerning the validity or fairness of the antenuptial agreement.
 The Antenuptial Agreement states:
Section 1. Property
1.1 Jeannie's Property. All property, real and personal, now and owned or hereafter acquired by Jeannie by purchase, sale, exchange, gift, devise, bequest, succession, or otherwise, shall be and remain her sole and separate property after the marriage the same as it would be if she remained single and unmarried.
1.2 Jerry's Property. All property now owned or hereafter acquired by Jerry by purchase, sale, exchange, gift, devise, bequest, succession, or otherwise, shall be and remain his separate property the same as it would be if he remained single and unmarried.
 ERISA mandates that pension plans provide automatic survivor benefits to surviving spouses. 29 U.S.C. § 1055 (2018). The surviving spouse's annuity cannot be waived unless the spouse consents to the designation of an alternate beneficiary in writing and in compliance with 29 U.S.C. § 1055(c)(1), (2) (2018).
 A "benefit plan is subject to ERISA only if it provides benefits to at least one employee." Sipma v. Mass. Cas. Ins. Co., 256 F.3d 1006, 1009 (10th Cir. 2001). Under the applicable regulations, the definition of employee does not include a sole owner or an individual and spouse who together have complete ownership. See id. at 1011; 29 C.F.R. § 2510.3--3(c). Plans that cover only sole owners or partners and their spouses fall outside ERISA's domain. Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon, 541 U.S. 1, 6 (2004).
 Other jurisdictions have also applied the substantial compliance doctrine to a change of beneficiary for an IRA. See, e.g., In re Estate of Golas, 751 A.2d 229, 232-33 (Pa. Super. Ct. 2000) (invoking substantial compliance to affirm the award of proceeds of an IRA account to the executors of the accountholder's estate, instead of the first designated beneficiary, where a terminally ill accountholder requested change of beneficiary forms but failed to receive them before his death).
 Internal Revenue Service regulations that govern such IRAs expressly provide for distributions of the IRA to beneficiaries upon the death of the owner and define "beneficiaries" to include "any person designated by the [owner] to share in the benefits of the account after death of the [owner]." 26 C.F.R. § 1.408-2(b)(7), (8) (2022). However, neither federal statutory law nor federal regulations prescribe how a beneficiary is to be designated.
 We agree with COCA's Order denying Wife's motion to strike Children's Amended Petition in Error due to their alleged noncompliance with the Oklahoma Supreme Court Rules filed on July 22, 2021. See Supreme Court Rule 2.1, 12 O.S.2021, ch. 15., app. 1.