J-A16030-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF: CAROL D. STANLEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: RICHARD H. STANLEY | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1424 WDA 2023 |

Appeal from the Order Entered November 14, 2023
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  No. 4446 of 2022

BEFORE:  KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: AUGUST 5, 2024**

Richard H. Stanley (Appellant) appeals from the order entering judgment on the pleadings against him, and rejecting his petition for citation asserting a change of beneficiaries and their apportioned shares of Carol D. Stanley's (Decedent) individual retirement account.  We affirm.

The orphans' court summarized the relevant history underlying this appeal:

> [Decedent] died testate on June[] 25, 2022, and her will was filed for probate on July 8, 2022.  This matter was commenced on January 23, 2023[,] by the filing of a Petition for a Citation for a Rule to Show Cause Against Morgan, Stanley, Smith, Barney LLC ("Morgan Stanley"), Lindsey Kieselbach [(Kieselbach)], Humane Animal Rescue of Pittsburgh [(HARP)], Hilltop Baptist Church [also known and formerly known as] The Log Church [(the Church)], and Zachary Gmitter [(Gmitter)] (the "Petition").  The Petition was filed by [Appellant], the spouse of … [Decedent.  Appellant is] the executor of the Decedent's estate, and [is also] a beneficiary of the non-probate account in dispute, an IRA Account with Morgan Stanley ([Morgan Stanley IRA or

IRA]). [Appellant] brings the Petition in his capacity as a beneficiary of the [IRA].

The … IRA is the Decedent's only non-probate asset other than a life insurance policy in which [Appellant] is the sole beneficiary. The beneficiaries on the [IRA] are: (1) [Appellant]; (2) [] Kieselbach; (3) [HARP]; (4) [the Church] … ; and (5) [] Gmitter. On October 1, 2019, the Decedent designated the beneficiaries of the IRA as follows:

(1) [Appellant]        −−− 10%

(2) [] Kieselbach     −−− 40%

(3) [HARP]             −−− 25%

(4) [The Church]      −−− 15%

(5) [] Gmitter         −−− 10%

The Petition avers that prior to the Decedent's death, the Decedent communicated her intention to change the beneficiary designation on the … IRA to Morgan Stanley. The Decedent received a partially pre-filled beneficiary designation form from Morgan Stanley[,] but did not return the completed form prior to [] Decedent's death. The Petition avers that after [] Decedent's death, [Appellant] found [on the back of an envelope] a handwritten re-designation of beneficiaries allegedly signed by the Decedent, which [Appellant] believes is a re-designation of the beneficiaries on the … IRA. The Petition alleges the writing re-designates the beneficiaries as follows:

(1) [Appellant]        --- 80%

(2) [] Kieselbach     --- 0%

(3) [HARP]             --- 10%

(4) [The Church]      --- 10%

(5) [] Gmitter         --- 0%

The Petition [requested that the orphans' court] reform the Morgan Stanley IRA distributions to conform with the handwritten re-

designation, issue [a] declaratory judgment ordering Morgan Stanley to revise the beneficiary distributions consistent with the Decedent's intent, and/or issue a preliminary injunction preventing Morgan Stanley from distributing the proceeds of the Morgan Stanley IRA until the matters … are adjudicated.

Orphans' Court Opinion, 1/31/24, at 1-2 (emphasis added).

Kieselbach filed an answer to the Petition. HARP, Gmitter, and the Commonwealth of Pennsylvania (*parens patriae* for the beneficiary charities) each filed answers and new matters. Appellant filed replies to the new matters.

On April 27, 2023, HARP filed a motion for judgment on the pleadings. Kieselbach, Gmitter and the Commonwealth joined the motion. Morgan Stanley filed no response and did not join the motion. The Church did not respond, and no appearance has been filed on its behalf.

The orphans' court heard argument on the motion on June 30, 2023. On November 14, 2023, the orphans' court entered an order granting judgment on the pleadings against Appellant and in favor of all respondents. Thereafter, Appellant timely appealed. Appellant and the orphans' court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues:

A. Whether the [orphans'] court abused its discretion or committed [an] error of law in granting the Motion … and not determining whether there are numerous fact issues requiring a hearing.

B. Whether the pleadings and [the Petition] … and responses thereto establish or raise facts to confirm whether the intentions and actions of the Decedent were sufficient to amend

and redesignate beneficiaries and reform the IRA contract of Decedent with Morgan Stanley … and are sufficient to deny the Motion ….

C. Whether there are any factual issues apparent from the pleadings that are assumed true or disputed and require a hearing and may have affected the [orphans'] court decision granting the Motion ….

D. Whether the Morgan Stanley … rules and regulations are relevant to Decedent's actions to change the beneficiaries of the IRA.

Appellant's Brief at 5-6 (capitalization modified).

We address Appellant's first three issues together, as they are related. Appellant initially argues the trial court improperly entered judgment on the pleadings against him. *Id.* at 12. Appellant claims his Petition alleged the following facts:

1. Paragraph 12 of the Petition references emails between Morgan Stanley and [Decedent] … establish[ing] the intent to change the beneficiaries and percentages.

2. Paragraph 13 of the Petition … set[s] forth the revised beneficiary list and corresponding percentages….

3. Exhibit C to the Petition[1] [presents] issues raised by [Respondents] herein *i.e.*[,] was it [Decedent's] signature or

_____

[1] According to Appellant's Petition, Exhibit C

is a true and correct copy of a writing signed by Decedent and dated June 23, 2022[,] two days prior to her death, which reflects Decedent's … intentions and actions to revise and re-designate the names and percentage shares of the beneficiaries of Decedent's IRA ….

Petition, 1/23/23, ¶ 13.

- 4 -

signatures?; did the list of names match the list of names on
Exhibit B to the Petition?

*Id.* at 15 (footnote added).

As evidence of Decedent's intent, Appellant points to the similarities between the beneficiary designations on the Morgan Stanley IRA and those in the Decedent's handwritten statement dated June 23, 2022. *Id.* at 16. Appellant asserts the Decedent "did everything she could to change the beneficiaries." *Id.* According to Appellant, "[w]hile the [r]ecord indicates [Decedent] was very cognizant (a fact now admitted by Respondents[] herein), she was also very sick and indeed dying." *Id.* Appellant claims these facts

> are not only sufficient to deny the [m]otion [for judgment on the pleadings,] but also at a minimum sufficient to require a hearing, engage in discovery[,] and even to grant Judgment in favor of … Appellant herein. If that's not the case, there should necessarily be a hearing to clarify that dispute.

*Id.* at 17-18.

In his second issue, Appellant argues that the pleadings asserted the facts necessary to establish that Decedent's actions changed the IRA's designation of beneficiaries. *Id.* at 18. In support, Appellant points to Petition Paragraphs 12 and 13, and Exhibit C. Appellant argues the Petition and its exhibits, viewed in a light most favorable to Appellant, established Decedent changed the beneficiaries and their shares of her IRA. *See id.*

Appellant also argues that his Petition, and HARP's answer and new matter, identified issues of fact regarding the validity of Decedent's signature

on the envelope, and her designation of beneficiaries. *Id.* at 20-21. Appellant claims HARP additionally raised issues of fact regarding whether the Decedent had the time necessary to complete Morgan Stanley's change of beneficiaries form. *Id.* at 21. Appellant points out that

> neither [HARP] nor any other Respondent [] has any knowledge of [D]ecedent's physical state at any relevant time, most didn't know her condition and yet expressed an opinion of the same. She was dying at the time.

*Id.*

In his third issue, Appellant similarly argues that there are factual issues requiring a hearing. *Id.* at 23. Appellant argues (a) the intent of Decedent to change percentages of beneficiaries was established through her communications with Morgan Stanley; and (b) Decedent requested to change the beneficiaries' apportioned shares, in her handwriting, "by obvious reference to the names on the original Morgan Stanley Beneficiary form." *Id.* According to Appellant, the orphans' court erred in not recognizing that the names on the envelope were the same as those on the original beneficiary designation form. *Id.* at 24. Thus, Appellant argues that the envelope should have been considered a change to the IRA's beneficiary designations. *See id.*

Our review of a trial court's decision granting judgment on the pleadings is plenary. *Wakeley v. M.J. Brunner, Inc.*, 147 A.3d 1, 5 (Pa. Super. 2016). We apply the same standard of review as the trial court: we confine our review to the pleadings and relevant documents, and we accept as true all well-pleaded statements of fact in favor of the non-moving party. *Id.* Judgment

on the pleadings "may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted). Thus, we will affirm the trial court when the moving party's right to succeed is certain. *Id.*

Count I of Appellant's Petition sought reformation of Decedent's IRA contract. Petition, 1/23/23, Count I. With regard to reformation, Pennsylvania courts have long recognized, "courts of equity have the power to reform a written instrument where there has been a showing of fraud, accident[,] or mistake." *Regions Mortg., Inc. v. Muthler*, 889 A.2d 39, 41 (Pa. 2005) (citation omitted). Appellant's petition avers no "fraud, accident[,] or mistake." *See id.* Thus, we discern no error by the orphans' court in denying Appellant's claim for contract reformation. *See id.*

> Count II of Appellant's Petition sought a declaratory judgment that
>
> Decedent intended to and did all that she could do under the circumstances to change the Beneficiaries and Percentage Distributions of Decedent's IRA; and regardless of Morgan Stanley's internal operating procedures and forms[,] said revision and re-de[]signation of the beneficiaries of Decedent's IRA is effective as a matter of law.

Petition for Citation, 1/23/23, *Id.* ¶ 28.

In Count III, Appellant sought injunctive relief to change the IRA's beneficiary designations to those stated on a handwritten envelope. *Id.* ¶¶ 28-35. Thus, Appellant sought to change the IRA's designated beneficiaries, and their apportioned shares, to those stated on the handwritten envelope.

As this Court has explained,

- 7 -

[i]n order to affect a change of beneficiary, the mode prescribed by the policy must be followed[.] *Sproat v. Travelers' Ins. Co.*, … 137 A. 621, 622 (Pa. 1927); *see also In re Estate of Golas*, 751 A.2d 229, 231 (Pa. Super. 2000) (stating, "[i]n general, one must follow the requirements specified by the policy in order to validly change the beneficiary" (citation omitted)).  An exception to this general principle permits a change of beneficiary to be effective if, under the circumstances, the policyholder substantially complied with the provisions of the policy.  *Sproat*, 137 A. at 622; *see also Riley v. Wirth*, … 169 A. 139, 140 (Pa. 1933) (holding, that when the policyholder made every reasonable effort, under the circumstances, to change the beneficiary designation, "more cannot be required" (citations omitted)).  Substantial compliance requires the policyholder to make "every reasonable effort to effect a change of beneficiary[.]" *Sproat*, 137 A. at 622; *see also Golas*, 751 A.2d at 231 (stating, "the intent of the insured will be given effect if he does all that he reasonably can under the circumstances to comply with the terms of the policy which permit a change of beneficiary" (citation, original quotation marks, and brackets omitted)).

*State Farm Ins. Co. v. Kitko*, 241 A.3d 648, 653 (Pa. Super. 2020).  *See also Golas*, 751 A.2d at 231 (applying the law regarding insurance beneficiary changes to IRA accounts).

In *Golas*, decedent Eugene Golas (Golas) established an IRA, with his sister named as the IRA's sole beneficiary.  *Id.* at 230.  Shortly before his death, Golas established a trust.  *Id.*  Golas sought to change his IRA's beneficiary so that the IRA funds would go directly into the trust.  *Id.*  Golas was unable to obtain the necessary forms, however, because his broker was away on vacation.  *Id.*  Golas was hospitalized on May 4, 1997, "suffering from complications related to his cancer." *Id.*  On May 6, 1997, Golas called his regular broker, who had returned from vacation.  *Id.*  The broker agreed

- 8 -

to mail the change-of-beneficiary form, but Golas died before receiving or executing the form. *Id.*

This Court ultimately upheld Golas's change of beneficiary, concluding sufficient evidence established (1) Golas's intent to change the beneficiary to his trust; and (2) Golas substantially complied with the plan's requirements for changing the beneficiary. *Id.* at 231-32. Regarding evidence of the decedent's intent, we explained,

> [t]here is no question that the decedent sought to establish a sizable educational trust which would require significant funds. He had succeeded in arranging for the proceeds of his savings plan and insurance policy to be used for that trust. The testimony was undisputed, and [the appellant] concedes in her brief, that [] Golas told his attorney (in Appellant's presence), as well as two brokers from Bryn Mawr, that he wished to change the beneficiary designation of his IRA. He was attempting to make this change to the IRA fund at the same time he changed the beneficiary of the other two plans to his estate. It is also clear that he asked one of the brokers of the IRA account, as well as his attorney, how to designate his estate as beneficiary. Additionally, his will included a specific bequest to [the a]ppellant of $100,000, and she conceded at the hearing that the decedent had told her in April 1997 that she "had enough [money] of [her] own." We agree with the conclusion of the trial court that this evidence sufficiently established that [] Golas intended to change the beneficiary of his IRA from Appellant to his estate….

*Id.* at 232.

Regarding "substantial compliance," this Court agreed with the trial court that Golas "made every reasonable effort under the circumstances to comply with the requirements of the IRA agreement." *Id.* at 232. We explained that,

- 9 -

[w]hile undergoing treatment in the latter stages of his terminal cancer, [Golas] was attempting to make provision for the disposition of his estate according to his wishes. Twice he explained to Bryn Mawr that he desired to change his IRA beneficiary, and asked that the appropriate document be forwarded to him. Unfortunately, not able to enjoy the luxury of time spent waiting for the mail to arrive, he died before the actual forms were received and could be executed. [**The Superior Court**] **agree**[**d**] **that his <u>clear intent</u> was to name his estate as the beneficiary of his IRA, and that he did everything he possibly could to formally comply with Bryn Mawr's procedure to effect the change**. The absence of any writing to indicate this particular change is of no moment under these circumstances. It would be wholly fallacious to expect [] Golas to have done any more than he did to accomplish the change, particularly in light of his rapidly deteriorating health.

*Id.* at 232-33 (emphasis added; citation and quotation marks omitted).

In *Alkhafaji v. TIAA-CREF Individual & Institutional Servs., LLC*, 69 A.3d 219 (Pa. 2013) (plurality), the Pennsylvania Supreme Court addressed whether the terms of a will could change the beneficiaries designated by a decedent's IRA.[2] In *Alkhafaji*, as part of a divorce settlement, the decedent purchased annuities naming two children from his prior marriages as beneficiaries. *Id.* at 221. Years later, the decedent executed a new will naming his then-spouse and all of his children as beneficiaries of the annuities. *Id.* at 221-22, 226. The decedent did not notify or send the will to the holder of the annuities, TIAA-CREF. *Id.* An evenly divided Supreme Court offered the following guidance:

---

[2] There are four opinions in *Alkhafaji*, none of which garnered a majority. One justice did not participate; two advocated for affirmance, and two advocated for reversal. *See Alkhafaji*, 69 A.3d at 219.

- 10 -

When a contract expressly provides the means of changing its terms, changes must be made in the manner and mode prescribed therein. This is rather basic contract law. **It is beyond peradventure that to effectuate a change in the beneficiary of an insurance policy, a party must comply with the procedures set forth in the policy.** This contract, indeed[,] most if not all annuity contracts, expressly required one thing to change beneficiaries — notice, sent to the insurer, in writing….

….

The general rule concerning a change of beneficiary requires strict or literal compliance with policy terms, though our case law has recognized an exception where an insured makes reasonable but unsuccessful efforts to send notice. **This exception will recognize a change in beneficiary designation, <u>even though notice is received after the death of the annuitant</u>, if the annuitant made every reasonable effort to comply with the notice requirements of the policy.** A will unsent constitutes no reasonable effort at notice, much less every reasonable effort. Equity and our case law may reward the stalwart but unsuccessful effort, but they never reward the absence of effort.

*Id.* at 222-23 (citations omitted; emphasis added).[3]

Appellant's pleadings, viewed in a light most favorable to him, established the following. Decedent maintained an IRA account with Morgan

_____

[3] In **Alkhafaji**, a plurality of our Supreme Court agreed with this Court that the decedent's will did not change the beneficiary designations in the decedent's retirement annuities. The opinion announcing the decision of the Supreme Court stated:

Decedent … did nothing — he took no steps to do the single thing the contract required. While a will could be the writing used to provide notice of a desire to change beneficiaries, if it is not sent to the insurer by the annuitant, it is merely an unmailed letter. As concerns the annuities, there is no magic in the fact it was a will.

**Alkhafaji**, 69 A.3d at 222 (plurality).

Stanley. Petition, 1/23/23, ¶ 8. The IRA's "Designation of Beneficiary", dated October 1, 2019, is attached to the Petition as Exhibit C. *Id.* Ex. C. On this form, Decedent designated the following beneficiaries of her IRA, with the stated percentage shares: Kieselbach (40%); HARP (25%); The Church (15%); Appellant (10%) and Gmitter (10%). *Id.* ¶ 9; *Id.* Ex. C.

In June 2022, Decedent sent emails to Morgan Stanley's representative, John Lamberson (Lamberson). *Id.* ¶ 12 and Ex. B (copies of the email exchanges). The emails stated Decedent's intention to revise her IRA's designation of beneficiaries and their stated percentage shares. *Id.* In her June 11, 2022, email to Lamberson, Decedent stated,

> Hi John. **Same as existing. I want to change percentages.** Thank you. Carol.

*Id.* Ex. B (emphasis added). On Wednesday, June 15, 2022, Decedent again emailed Lamberson:

> John. I want to change IRA distributor [*sic*] asap. [Thank you]. Carol.

*Id.* About an hour later, Lamberson replied:

> [O]k. I'm on family vacation this week but I've CC'ed Deb[4] to help out asap!!

*Id.* (footnote added). That same day, Caley responded to Decedent:

> **I just sent the documents needed to you via Morgan Stanley Online secure email.** I have pre-filled the information that I could. I am not permitted to pre-fill social security numbers

---

[4] Deborah Caley (Caley), listed on the email, is also a representative of Morgan Stanley.

or tax ID numbers.  If you have any questions on how to complete the documents, please give me a call.

*Id.* (emphasis added).  Appellant's Petition asserted these emails established Decedent's intention to revise the IRA beneficiaries' names and percentage shares.  *Id.* ¶ 12.

Appellant additionally presented a hand-written envelope back, which listed partial names and numbers, marked as Exhibit C to the Petition.  *See id.* Ex. C.  A copy of Exhibit C is depicted below:



Appellant acknowledged he was not present when Decedent wrote on the envelope. *Id.* ¶ 14.

Appellant's Petition asserted,

due to delays resulting from Decedent's primary contact at Morgan Stanley being on vacation, and a further delay before Morgan Stanley provided Decedent with the … designated forms required by Morgan Stanley to effectuate and process Decedent's revision and re-designation of the names and percentages shares of the beneficiaries of Decedent's IRA; **Decedent died before being able to formally process the revision and re-designation of the beneficiaries of her IRA <u>in accordance with Morgan Stanley's requirements and internal operation procedures</u>.**

*Id.* ¶ 16 (emphasis added). Thus, Appellant's Petition acknowledged Morgan Stanley (a) provided Decedent with the necessary beneficiary designation forms after a delay, and (b) Decedent died before executing the redesignation forms in accordance with Morgan Stanley's procedures and requirements. *See id.*

In his replies to new matter filed on April 18, 2023, Appellant incorporated five affidavits, as summarized below:

<u>Affidavit of Leah Ruth Sheetz, R.N. (Sheetz)</u> – Sheetz stated she provided care for the Decedent during the Summer of 2022. Sheetz averred that Decedent was of sound mind and capable of making her own decisions. Sheetz cared for Decedent until she was accepted to hospice. Reply to New Matter (HARP), 4/18/23, Ex. 1 (Affidavit of Sheetz, 4/14/23).

Affidavit of Michael Gestrich (Gestrich) - Gestrich, the pastor of the Church, attested he had known Decedent since September 2018. According to Gestrich, Decedent

> was completely conversant and spoke very clearly. … [Decedent] told me she had money in some sort of savings and she was leaving money to the church but I had no idea how much. [**Decedent**] **said she wanted to change the Beneficiaries because** [**Appellant**] **was very good to her and she wanted to leave most of the money to** [Appellant].
>
> I also spoke with her by phone on June 13, 2022[,] while she was in the hospital. **She said she was going to talk with her Financial Advisors about changing her Beneficiaries.** The conversation was very similar to when I personally visited with her. She was very mentally coherent[,] although very physically sick.
>
> On June 22, 2022[,] at 12:25 pm she sent me a text saying her health had taken a bad turn yesterday. **She urgently asked if someone could replace the ink in her printer because she had to send forms to her personal advisor at Morgan Stanley.**
>
> On June 23, 2022, at 9:40 am she texted me a very clear message saying, **Please disregard previous message about tech support. Morgan Stanley** [*sic*] **with the previous issue, my manager is personally handling the matter**.

*Id.* Ex. 2 (Affidavit of Gestrich) (emphasis added).

Affidavit of David B. Murray (Murray) – Murray, a friend of Appellant and Decedent, attested to Decedent's sound mental state on June 13, 2022. *Id.* Ex. 3 (Affidavit of Murray).

Affidavit of Sharon Barley (Barley) – Barley, Appellant's sister, attested to Decedent's sound mental state prior to her death. Barley indicated she found an envelope with Decedent's handwriting and signature during the week

- 15 -

after July 7, 2022. Barley Affidavit, 4/17/23, at 4. According to Barley, she found the envelope after printing emails from Decedent's computer. *Id.* Ex. 4 (Affidavit of Barley). She placed the documents on Appellant's desk. *Id.*

Appellant's Affidavit - Appellant executed an affidavit stating that, on June 22, 2022, Decedent, who was hospitalized and experiencing nausea, "**still talked and was looking at her computer**." *Id.* Ex. 5 (Appellant's Affidavit) (emphasis added). Appellant indicated Decedent had a "rough night" on June 23, 2022. *Id.* Ex. 5, at 2. According to Appellant, on June 24, 2022, Decedent indicated it was time "to go on to hospice." *Id.* Decedent passed away on June 25, 2022. *Id.*

The handwritten envelope, read in a light most favorable to Appellant, fails to demonstrate Decedent intended to change her IRA beneficiary designations **to match the writing on the envelope**. *See* Petition, 1/23/23, Ex. C. The envelope stated partial names and numbers. *Id.* Ex. C. However, it contradicted Decedent's June 11, 2022, prior email to Lambert. In that email, Decedent expressed her intent to have the "**same as existing**" beneficiaries with different percentages. *Id.* Ex. B. The handwritten envelope, by contrast, excluded "Zach" and "LC" (the Church) from receiving IRA distributions. *Id.* Ex. C. Thus, the envelope contradicted Decedent's prior stated intention to keep the same beneficiaries. The evidence, viewed in a light most favorable to Appellant, failed to demonstrate Decedent intended to change the beneficiary designations to those stated on the envelope.

Regarding substantial compliance, Appellant averred, "Decedent died before being able to formally process the revision and re-designation of the beneficiaries in accordance with Morgan Stanley's requirements and procedures." Petition, 1/23/23, ¶ 16. However, Appellant's attached emails showed that Morgan Stanley notified Decedent it had uploaded the requested beneficiary designation documents on June 15, 2022. *Id.* Ex. B. The affidavits indicated that Decedent requested assistance with her printer on June 22, 2022. *Id.* However, on June 23, 2022, Decedent notified Gestrich that her "manager is personally handling the matter." *Id.* Further, "[e]ven though [Decedent] felt nausea, she still talked **and was looking at her computer.**" Appellant's Affidavit, 4/12/23, at 2 (emphasis added).

As the orphans' court explained,

[a]ssuming the writing offered to reform the beneficiaries of the IRA is authentic and the product of the Decedent, the writing is insufficient as a matter of law to satisfy Morgan Stanley's policies and procedures relating to redesignating an IRA's beneficiaries. Further, even under the "substantial compliance" exception under exigent circumstances, **the writing is insufficient and too ambiguous to satisfy the requirement that the Decedent do all she reasonably could accomplish to effectuate the redesignation under the circumstances.**

….

In this case, there are no genuine factual disputes that, when viewed most favorably for [Appellant], could result in a finding for the reformation of the IRA designations in [Appellant's] favor.

Orphans' Court Opinion, 1/31/24, at 4, 6 (emphasis added). We agree with the orphans' court's reasoning and conclusion. *See id.* The pleadings and

attachments, even read in a light most favorable to Appellant, failed to establish a change of the IRA's beneficiaries' percentage designations to those stated on the hand-written envelope. Appellant's first three issues merit no relief.

In his final issue, Appellant argues Morgan Stanley's rules and regulations are not controlling in determining whether Decedent's actions changed the percentages/beneficiaries of the IRA. Appellant's Brief at 25. Appellant argues, "the fact that [Decedent] did not reference Morgan Stanley in her writing is irrelevant." *Id.* According to Appellant,

> [t]he correspondence was between [Decedent] and Morgan Stanley[,] and the named beneficiaries on the envelope were obviously and logically the same.
>
> In this case the pleadings reveal that [Decedent] requested [the] change of [b]eneficiary form and indicated that she wanted to change percentages. While it is assumed that the forms were sent to her via email, those forms are not in the pleadings.
>
> What is in the pleadings[,] in the handwriting of [Decedent,] were names and percentages on an envelope with a date and her signature twice.
>
> The only change was the percentage distribution, which is exactly what was requested….

*Id.* at 26. Appellant again claims the Respondents and the orphans' court refused to consider that Decedent "was extremely sick and dying[.]" *Id.* Appellant asserts, "logic and facts also tell us she did everything she reasonably could do to execute her intent." *Id.*

- 18 -

As we stated above, "[i]n general, one must follow the requirements specified by the policy in order to validly change the beneficiary[.]" *Golas*, 751 A.2d at 231. "An exception to this general principle permits a change of beneficiary to be effective if, under the circumstances, the policyholder substantially complied with the provisions of the policy." *Kitko*, 241 A.3d at 653.

In *Golas*,

[t]he testimony was undisputed, … that Mr. Golas told his attorney (in Appellant's presence), as well as two brokers from Bryn Mawr, that he wished to change the beneficiary designation of his IRA. He was attempting to make this change to the IRA fund at the same time he changed the beneficiary of the other two plans to his estate. It is also clear that he asked one of the brokers of the IRA account, as well as his attorney, how to designate his estate as beneficiary….

….

… We agree that [decedent's] clear intent was to name his estate as the beneficiary of his IRA, and that he did everything he possibly could to formally comply with Bryn Mawr's procedure to effect the change….

*Golas*, 751 A.2d at 231-32.

By contrast, in Appellant's petition, he asserted:

Decedent died **before** being able to formally process the revision and re-designation of the beneficiaries of her IRA in accordance with Morgan Stanley's requirements and internal operating procedures.

Petition, 1/23/20, ¶ 16 (emphasis added). Thus, Appellant acknowledged Decedent had not redesignated the IRA's beneficiaries in accordance with Morgan Stanley's requirements and internal operating procedures. In fact,

Decedent never communicated her specific beneficiary changes to the Morgan Stanley IRA to anyone, let alone the institution.

Appellant's undisputed pleadings establish Decedent remained coherent and using her computer up to June 23, 2022, yet she failed to notify Morgan Stanley of her intended changes. Thus, the orphans' court determined Decedent did not do "all that [s]he reasonably [could] under the circumstances to comply with the terms of the policy which permit a change of beneficiary."[5] *Golas*, 851 A.2d at 231. Discerning no error, we affirm the orphans' court's order entry of judgment on the pleadings in favor of Respondents and against Appellant.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/5/2024

---

[5] The envelope is of limited assistance in ascertaining Decedent's intent. It includes crossed-out numerals, no percentage marks, and contradicts Decedent's stated intention in her email to Morgan Stanley. Moreover, the envelope does not identify what Decedent was referring to: her Morgan Stanley account/IRA, or her estate generally. There is simply not enough identifying information on this envelope to effectuate a contractual change to her Morgan Stanley IRA account.